

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| JOAN L. ROBINSON, | ) | No. ED100958 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable David L. Vincent, III |
| JOHN F. LAGENBACH, et al., | ) | |
| | ) | |
| Respondents. | ) | Filed: September 2, 2014 |

The plaintiff, Joan Robinson, appeals the summary judgment entered by the Circuit Court of St. Louis County in favor of the defendants, John Langenbach, Judy Longbrook, and Perma-Jack Company, in Robinson's action against them. We affirm in part, and reverse and remand in part.

Because we conclude that a majority of the directors had authority to remove Robinson from her position as company president and treasurer, we deny Robinson's first two points and affirm the trial court's judgment with regard to this question. Furthermore, because Robinson has alleged no action taken by Langenbach that breaches his fiduciary duty to Robinson as a trustee of the voting trust, we affirm the judgment insofar as Robinson challenges the grant of summary judgment on this basis.

Robinson's remaining challenges involve shareholder oppression, breach of the defendants' fiduciary duties as directors and controlling shareholders, and application of the business-judgment rule. Resolution of these challenges requires making credibility

determinations and choosing among competing inferences, which are not permitted at the summary-judgment stage. Therefore, we reverse and remand for trial on these issues.

*Facts and Procedural Background*

In 1975, George Langenbach incorporated Perma-Jack Company, a franchisor of a foundation steel-piering system. Plaintiff Robinson and Defendants Langenbach and Longbrook are George Langenbach's children. In 1985, in anticipation of his retirement and transfer of the company to his children, George Langenbach established a voting trust for the company, appointing Robinson and Langenbach as the two trustees. In 1988, Robinson, Langenbach, and Longbrook were named as the company's three directors. The three siblings now own the shares of the company in equal portions.

Prior to June 20, 2012, Robinson served as president and treasurer of the company, and Langenbach served as vice-president and secretary. Robinson's son and one of Langenbach's daughters also worked for the company. Robinson was responsible for the administrative side of the business while Langenbach was responsible for recruiting, communicating with, and visiting new and prospective franchisees. Both Robinson and Langenbach had responsibility for maintaining franchisee relationships. Longbrook served as a director but had no role in the day-to-day operations of the company.

Significant differences developed among the parties concerning the management, policies, and direction of the company. Langenbach asked Robinson to resign, and she refused. At a special meeting on June 20, 2012, Langenbach and Longbrook voted in their capacity as directors to remove Robinson as president and treasurer, and her employment with the company and that of her son were terminated. A two-thirds majority of the directors appointed Langenbach as president. The board of directors later appointed Langenbach's daughter as

2

secretary of the company, and she began working for the company full-time. Langenbach's other daughter began part-time employment with the company.

Robinson sued the defendants for breach of fiduciary duty and for dissolution of the company or other equitable relief based on shareholder oppression and waste and misapplication of corporate assets. Robinson's first amended petition also sought relief for wrongful termination, but she dismissed this claim. Robinson also abandoned her claims of waste and misapplication of corporate assets.[1] The trial court granted the defendants' motion for summary judgment, and denied Robinson's motion for partial summary judgment without rendering findings of fact or conclusions of law. Robinson appeals.

Robinson claims the trial court erred in granting summary judgment for the defendants and in denying her motion for partial summary judgment based on the court's implicit determination that the directors could legally remove Robinson as president and treasurer despite the language of the voting trust. Further, Robinson claims the trial court erred in granting summary judgment for the defendants because the evidence was sufficient to support her claims of shareholder oppression and breach of fiduciary duty and because the evidence does not support the defendants' entitlement to the protection afforded by the business-judgment rule.

*Standard of Review*

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo. Id.* When considering an appeal from

---

[1] The defendants filed a counterclaim requesting an accounting and payment of income, but they dismissed this counterclaim.

3

summary judgment, we review the record in the light most favorable to the party against whom the court entered judgment. *Id.*

The axiom that we view the record "in the light most favorable to the non-movant" means that the movant has the burden to establish a right to judgment as a matter of law on the record as submitted. *Id.* at 382; *Cardinal Partners, LLC v. Desco Investment Co., L.L.C.*, 301 S.W.3d 104, 109 (Mo. App. E.D. 2010). If the movant requires an inference to establish the right to judgment as a matter of law, and the evidence reasonably supports any inference other than, or in addition to, the movant's inference, a genuine dispute exists, and the movant's prima facie showing fails. *Id.*

*Authority of the Directors to Remove Robinson as President and Treasurer*

In her first point, Robinson claims the trial court erred in granting summary judgment for the defendants based on the assumption that the directors had authority to remove her as president and treasurer of the company. She contends that because the disputed resolution purporting to grant such authority violated the terms of the voting trust, the defendants lacked the authority to remove her. In her second point, Robinson claims the trial court erred in denying her motion for partial summary judgment because the disputed resolution removing her as president and treasurer of the company, passed and enforced without corporate authority, violated the individual defendants' fiduciary duties to the plaintiff. Because they involve resolution of the same issue—whether Langenbach and Longbrook could legally remove Robinson as president and treasurer of the company despite the language of the voting trust—we consider these two points together.

We construe corporate articles and by-laws pursuant to the general rules of contracts. *Ironite Products Co., Inc. v. Samuels*, 985 S.W.2d 858, 861 (Mo. App. E.D. 1998).

4

Interpretation of a contract is a question of law. *Systemaire, Inc. v. St. Charles County*, 432 S.W.3d 783, 787 (Mo. App. E.D. 2014).

Article III, Section 1 of the company's original by-laws adopted in 1975 provides in relevant part that "[t]he property and business of the corporation shall be controlled and managed by a board of one director." Amendments to the by-laws increased the number of directors. Since 1988, Robinson, Langenbach, and Longbrook have served as the three directors of the company. Article III, Section 6 of the company's original by-laws provides that a majority of the full board of directors shall constitute a quorum for the transaction of business. This section continues: "The action of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors." Article IV, Section 2 of the company's original by-laws addresses the tenure of officers and provides in relevant part:

> Any officer or agent appointed by the Board of Directors may be removed by the Board of Directors whenever in the judgment of the Board the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

In 1985 the company's sole director at that time, George Langenbach, amended the by-laws to provide for the position and duties of a chairman of the board as the chief executive officer of the company, to designate the president as the chief operating officer of the company, and to renumber the sections within Article IV. The current Article IV, Section 4, as amended in 1985, provides in relevant part that "[t]he President shall be the chief operating officer of the corporation and shall exercise general supervision, direction, management and control over all the business and affairs of the corporation, subject at all times to the control of the Board of Directors."

5

Except as set forth here, the by-laws as relevant to our inquiry remained unchanged since their inception. Langenbach and Longbrook, representing two-thirds of the directors, voted at a special meeting to remove Robinson as president and treasurer of the company. Constituting a two-thirds majority of the directors, Langenbach and Longbrook possessed authority to take this action according to the company's by-laws.

Robinson contends, however, that the voting trust agreement established in 1985 precludes such action because Article 5 of the voting trust required the unanimous consent of the two trustees—namely Robinson and Langenbach—to the resolution that removed Robinson as president and treasurer, and that such consent was not obtained. Article 5 of the voting trust is titled "Trustees' Rights in Stock."[2] Robinson argues that Article 5 of the voting trust requires the trustees to unanimously approve or veto every resolution of any character whatsoever adopted by the board of directors. We disagree. Such an interpretation would render the board of directors superfluous and transfer power for all corporate decisions to the trustees who vote the shareholders' stock.

---

[2] Article 5 provides in full:

> Until the transfer of the Stock out of the name of the Trustees on the books of the Company, the Trustees shall have the right to exercise in person or by nominee or proxy or proxies, all rights and powers of the record owners of the Voting Trust Certificates in respect of all Stock represented thereby, including the right to vote the Stock and take part in or consent to any corporate or shareholders' action of any kind whatsoever. In voting and taking part in or consenting to any corporate or shareholders' action, the Trustees shall act unanimously. Except as otherwise provided herein, the right to vote shall include the right to vote for the election of Directors and in favor of or against any resolution or proposed action of any character whatsoever, or ratification of any past action, which may be presented at any meeting or require the consent of the shareholders of the Company, and shall include, without limiting the generality of the foregoing, the right to vote in favor of the election of the Trustees as Directors or officers of the Company. In voting upon any matters, the Trustees shall exercise their best judgment and shall not be liable for any error of judgment or mistake of law or fact, or for any other action taken or failed to be taken by the Trustees, except for willful misconduct.

It is a general principle that management and control of a corporation is vested in the board of directors. *Fix v. Fix Material Co., Inc.*, 538 S.W.2d 351, 359 (Mo. App. St.L.D. 1976). The company in this case is no different. Article III, Section 1 of the company's by-laws, as amended in 1988 *after* adoption of the voting trust, reiterates in relevant part that "*[t]he property and business of the corporation shall be controlled and managed by a board* of three (3) directors." (Emphasis added). Furthermore, Langenbach and Longbrook, acting as the majority of the directors of the company, could remove Robinson as president and treasurer according to the plain language of the by-laws, which state "[a]ny officer or agent appointed by the Board of Directors may be removed by the Board of Directors . . . ."

The voting trust does not alter the actions that may be taken by the directors. Rather, the voting trust affects the rights and responsibilities of the shareholders and establishes a framework for the trust to vote all outstanding shares. The voting trust sets forth, *inter alia*, that the trustees will receive and hold the outstanding shares of stock for the shareholders; that the trustees will vote those shares for the shareholders; that the trustees must act unanimously; that a trustee must be actively involved in the day-to-day operation of the company's business in order to qualify as a trustee; and that in the event there remains only one able, willing, and qualified trustee, that person shall act as the sole trustee. The voting trust does not address the rights and responsibilities of the directors and officers, and has no bearing on their rights and obligations as directors and officers.

Therefore, we reject Robinson's contention that, as a two-thirds majority of the board of directors, Langenbach and Longbrook lacked authority to adopt the disputed resolution and to take the actions stated therein, namely removing Robinson as the company's president and treasurer. We deny Robinson's first two points.

7

*Langenbach's Fiduciary Duty As Trustee of the Voting Trust*

In her fourth point, Robinson claims the trial court erred because the evidence supported her claim of breach of fiduciary duty. In her petition, Robinson asserted a claim for breach of fiduciary duty, and contended that Langenbach and Longbrook owe her a fiduciary duty in their capacities as directors and controlling shareholders. She also maintained that Langenbach owes her a fiduciary duty in his capacity as trustee of the voting trust.[3] We must separately consider Robinson's claims of breach of fiduciary duty in the capacity of trustee of the voting trust and in the capacity of directors and controlling shareholders.

Robinson pleaded that she was removed as an officer of the company, terminated from her employment with the resulting loss of salary and benefits, and removed from the company's day-to-day operations and thus removed as a trustee of the voting trust. She also cites increased compensation for Langenbach and his daughter and installation of the daughter as company secretary as evidence of wrongdoing. Robinson speculates that Langenbach and Longbrook will in the future use their control to remove her as a director. This is the only allegation even arguably related to Langenbach's capacity as trustee of the voting trust since the trustees who vote all the shares of stock thus elect the directors, and it is entirely speculative. According to the by-laws, the board of directors and the president, not the trustee(s) of the voting trust, have authority to make the personnel and compensation decisions that Robinson complained have already occurred.

In her brief, Robinson devotes no single point to Langenbach's purported breach of fiduciary duty as a trustee of the voting trust. We have already determined that the majority of the directors had the authority to remove Robinson, and that this action did not require approval

---

[3] Longbrook is not a trustee of the voting trust.

by the trustees of the voting trust. Robinson's third point primarily addresses shareholder oppression although it does state that controlling shareholders have a fiduciary duty to refrain from using their control to obtain a profit for themselves at the expense of the minority or to produce corporate action designed to operate unfairly to the minority. The allegedly oppressive acts listed in Robinson's third point, however, are all actions that Langenbach would have taken as a director or as president responsible for general supervision, direction, management and control over all the business and affairs of the corporation. None of Robinson's listed complaints involve actions taken as a trustee entitled to vote all shares of the voting trust.

Because Robinson has alleged no action that breaches Langenbach's fiduciary duty as a trustee of the voting trust, we affirm the judgment insofar as Robinson challenges the grant of summary judgment on this basis.

### *Shareholder Oppression, Breach of the Defendants' Fiduciary Duty As Directors and Controlling Shareholders, and Application of the Business-Judgment Rule*

In her third point, Robinson claims the trial court erred in granting summary judgment for the defendants because the evidence failed to establish shareholder oppression sufficient to warrant dissolution of the company. Shareholder oppression suggests 1) burdensome, harsh, and wrongful conduct; 2) a lack of probity and fair dealing in the company's affairs to the prejudice of some of its members; or 3) a visible departure from the standards of fair dealing and a violation of fair play on which every shareholder is entitled to rely when entrusting her money to a company.[4] *Fix*, 538 S.W.2d at 358. The existence of shareholder oppression must be determined on a case-by-case basis. *Struckhoff v. Echo Ridge Farm, Inc.*, 833 S.W.2d 463, 467 (Mo. App. E.D. 1992).

---

[4] The parties dispute whether the three elements of shareholder oppression require the conjunctive "and" or the disjunctive "or." We need not decide this issue.

9

In her fourth point, Robinson claims the trial court erred because the evidence supported her claim of breach of fiduciary duty. The officers and directors of a corporation occupy a fiduciary relationship to the corporation and to the shareholders. *Waters v. G & B Feeds, Inc.*, 306 S.W.3d 138, 146 (Mo. App. S.D. 2010). Their position is one of trust, and in the event of a conflict, they are bound to act with fidelity and to subordinate their personal interest to the interest of the company. *Id.* This fiduciary duty requires corporate directors and officers to exercise the utmost good faith in the discharge of their duties and to act for the corporation and its shareholders, giving all the benefit of their best judgment. *Id.* Furthermore, officers of a closely held corporation owe a higher degree of fiduciary duty to shareholders than do their counterparts at public corporations. *Id.* at 146-47.

In her final point, the plaintiff claims the trial court erred in granting summary judgment in favor of the defendants based on the business-judgment rule because the evidence does not support the defendants' entitlement to the protection afforded by the rule. The business-judgment rule protects the directors and officers of a corporation from liability for *intra vires* decisions within their authority and made in good faith, uninfluenced by any consideration other than an honest belief that the action promotes the corporation's best interest. *Sutherland v. Sutherland*, 348 S.W.3d 84, 89-90 (Mo. App. W.D. 2011). The rule precludes courts from interfering with the decisions of corporate officers and directors absent a showing of fraud, illegal conduct, an *ultra vires* act, or an irrational business judgment. *Id.* at 90.

The parties do not dispute the basic facts—who took what actions. The real dispute lies in the reason for the actions or whether those actions were justified, and thus whether the actions constitute shareholder oppression or breach of the defendant's fiduciary duty as directors and controlling shareholders and whether the business-judgment rule protects the defendants.

10

Virtually every action taken by either Robinson or Langenbach is portrayed as appropriate and justified by the one who took the action and as sinister and self-serving by the other side. Resolution of Robinson's challenges concerning shareholder oppression, breach of the defendants' fiduciary duty as directors and controlling shareholders, and application of the business-judgment rule require the trial court to make credibility determinations and to choose among competing inferences, which is not permitted at the summary-judgment stage.

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin.*, 854 S.W.2d at 376. When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom the court entered judgment. *Id.* "[T]he rule that we give the non-movant the benefit of all reasonable inferences means that if the movant requires an inference to establish the right to judgment as a matter of law, and the evidence reasonably supports any inference other than, or in addition to, the movant's inference, a genuine dispute exists, and the movant's prima facie showing fails." *Cardinal Partners*, 301 S.W.3d at 109. Therefore, we reverse and remand for trial the issues of shareholder oppression, breach of the defendants' fiduciary duty as directors and controlling shareholders, and application of the business-judgment rule.

*Conclusion*

We conclude that a majority of the directors had authority to remove Robinson from her position as company president and treasurer, despite the language of the voting trust. We affirm the trial court's judgment with regard to this question. Furthermore, because Robinson has alleged no action Langenbach took that breaches his fiduciary duty to Robinson as a trustee of

11

the voting trust, we affirm the judgment insofar as Robinson challenges the grant of summary judgment on this basis.

Resolution of Robinson's challenges concerning shareholder oppression, breach of the defendants' fiduciary duty as directors and controlling shareholders, and application of the business-judgment rule, however, require making credibility determinations and choosing among competing inferences. Therefore, we reverse and remand for trial on these issues.

_____
LAWRENCE E. MOONEY, JUDGE

CLIFFORD H. AHRENS, P.J., and
GLENN A. NORTON, J., concur.