

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

VIRGIL KIRCHOFF REVOCABLE )
TRUST DATED 06/19/2009; ) No. ED102900
BENJAMIN KIRCHOFF and MICHAEL )
WENZEL, Co-Trustees of the VIRGIL )
KIRCHOFF REVOCABLE TRUST )
DATED 06/19/2009; FAIRLYN )
FORSYTH KIRCHOFF ) Appeal from the Circuit Court
MOORADIAN; and THE KIRCHOFF ) of St. Louis County
LIMITED PARTNERSHIP, )
)
    Plaintiffs/Appellants, )
) Honorable Colleen Dolan
v. )
)
MOTO, INC., )
)
    Defendant/Respondent. ) Filed: March 8, 2016

### Introduction

The Virgil Kirchoff Revocable Trust Dated 06/19/2009 (Trust); Benjamin

Kirchoff and Michael Wenzel, Co-Trustees of the Trust; Fairlyn Forsyth Kirchoff

Mooradian (Mooradian); and the Kirchoff Limited Partnership (collectively Appellants)[1]

---

[1] Moto asserts in its brief that this Court lacks jurisdiction to consider the appeal of Mooradian and the Kirchoff Limited Partnership because they failed to file a notice of appeal, in that they were not included as parties on appeal in the notice of appeal timely filed by Appellants' counsel on behalf of the Trust. Approximately two months after Benjamin Kirchoff filed his notice of appeal on behalf of the Trust, Appellants filed a "Notice Regarding Clarification of Parties" with this Court asserting Benjamin Kirchoff was listed as the only appellant due to a clerical error and seeking to add the additional parties as appellants. Moto did not challenge this Court's jurisdiction of the parties prior to filing its brief.

    The notice of appeal shall specify the parties taking the appeal. Rule 81.08(a). However, "'[t]echnical adherence to the formal averments of a notice of appeal is not jurisdictional, and the

appeal from the trial court's grant of summary judgment in favor of Moto, Inc. (Moto) on

Appellants' claim seeking dissolution of Moto due to shareholder oppression. We affirm.

Factual and Procedural Background

Moto, doing business as MotoMart, is a Missouri closely-held corporation that

owns and operates gasoline convenience stores in Illinois, Missouri, Indiana, Ohio,

Wisconsin, and Minnesota.

Virgil Kirchoff served as Moto's Chief Executive Officer and Chairman of

Moto's Board of Directors (Board) for many years before stepping down in 2005, and

was a shareholder prior to his death. The Trust is a shareholder of Moto. Mooradian,

Virgil Kirchoff's ex-wife, is a shareholder and served on Moto's Board from 1963 to

2012. Benjamin Kirchoff and Mooradian are the two general partners of the Kirchoff

Limited Partnership, which is a Missouri limited partnership and a shareholder of Moto.

In July 2010, Benjamin Kirchoff, the Trust, and the Partnership collectively held at least

20 percent of the issued and outstanding shares of Moto.

In June 2011, Appellants filed suit against Moto and the Board. The trial court

dismissed all but Count I against Moto seeking dissolution of the corporation based on

minority shareholder oppression. Appellants alleged Moto engaged in oppressive

conduct by arbitrarily valuing Moto's stock and failing to disclose to the minority

averments are to be liberally construed to permit appellate review so long as the opposing party is not misled to his or her irreparable harm.'" McCrainey v. Kansas City Missouri Sch. Dist., 337 S.W.3d 746, 751 (Mo. App. W.D. 2011), quoting L.J.B. v. L.W.B., 908 S.W.2d 349, 351 (Mo. banc 1995). Here, the Appellants are similarly situated, are bringing identical claims, and are seeking identical relief. Moto was not misled in any way and will not suffer any irreparable harm by allowing Mooradian and the Kirchoff Limited Partnership to proceed as parties on appeal. See also Tillis v. City of Branson, 945 S.W.2d 447, 448 (Mo. banc 1997) (finding no jurisdictional defect and treating the appellant's suggestions in opposition to the respondent's motion to dismiss the appeal based on an untimely notice of appeal, as a timely filed motion seeking a special order permitting a late filing of the notice of appeal pursuant to Rule 81.07(a)). All Rule references are to Mo. R. Civ. P. 2014.

shareholders interest expressed by Casey's General Stores, Inc. (Casey) in acquiring Moto.

On February 6, 2013, Moto moved for summary judgment. In response, Appellants asked the trial court for a continuance to pursue written discovery and depose various directors and officers of Moto, which the court granted. On November 25, 2014, Moto filed its Amended Motion for Summary Judgment. On January 14, 2015, Appellants filed their Response to Moto's Amended Motion for Summary Judgment. On February 4, 2015, Moto filed its Reply Memorandum.

The following relevant facts are set forth in the summary judgment record:[2]

Moto's Amended and Restated By-Laws do not obligate the Board to buy back shareholder stock. Nor is there any written agreement requiring Moto to repurchase a shareholder's stock. In the past, however, Moto has bought back shares to provide some liquidity to its shareholders.

The Board annually determines the price Moto will pay for each share of stock the company repurchases from its shareholders. When valuing the stock for purposes of redeeming a shareholder's stock, the Board considers, among other things, the corporation's Earnings Before Interest, Taxes, Depreciation, and Amortization

---

[2] The non-movant may not rest upon mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial. Crow v. Crawford & Co., 259 S.W.3d 104, 113 (Mo. App. E.D. 2008). "Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." Premier Golf Missouri, LLC v. Staley Land Co., LLC, 282 S.W.3d 866, 871 (Mo. App. W.D. 2009). Appellants' Response contained several denials of Moto's uncontroverted statement of facts and additional statements of uncontroverted material facts which were not adequately supported by evidence establishing such denials or statements of fact. In the interest of brevity, this Court will not specifically address these deficiencies because Moto addressed the deficiencies at length in its Reply to Appellants' Response to Moto's Statement of Uncontroverted Material Facts and Response to Appellants' Additional Statement of Uncontroverted Facts.

(EBITDA) and cash flow, the stock price of comparable publicly-traded c-store chains, and recent mergers and acquisitions of c-store chains.

Beginning in 1997, the Board used a three-year six times cash flow method to determine share value for purposes of redeeming a shareholder's stock. Benjamin Kirchoff was part of the committee that recommended this valuation method to the Board. The Board subsequently realized other companies routinely valued shares of stock based on the EBITDA generated and believed utilizing the EBITDA method would move Moto to a more standardized and recognized formula.

In February 2003, the Board unanimously approved the 5.5 times three-year average of EBITDA method as a guide to determine share value when buying back a shareholder's stock. The Board arrived at the 5.5 multiplier by taking the six times cash flow multiple used prior to 2003 and multiplying it by 90 percent since 2001 and 2002 indicated that cash earnings calculated to 90 percent of EBITDA, resulting in a multiplier of 5.4 which the Board rounded up to 5.5. This multiplier was checked against the Trefethen Advisors, LLC (an independent financial advisory and investment management firm) statistics which showed it was in the range of what other closely held corporations were selling for at that time. The Board elected not to specifically reduce the multiple for either a minority discount or lack of marketability discount. At times, the Board used a one- or two-year average of EBITDA instead of a three-year average because of the Board's concern about Moto's stock price decreasing, and the Board opted to keep the share price the same or increase it.

The Board does not set the price at which a Moto shareholder may sell his shares to any other person. Shareholders are free to market and sell their shares of Moto stock to an outside third party for a mutually agreeable price.

Moto presented a document to its shareholders at the annual meetings labeled "Theoretical Market Value Per Share" that listed the share price set by the Board. Gary Arnold, Moto's CFO and a corporate representative, testified "Theoretical Market Value Per Share" was intended to establish a fair price for purposes of Moto buying back shares from stockholders or allowing for the reinvestment of dividends. Appellants concede it was understood that "Theoretical Market Value Per Share" was the price at which Moto agreed to buy back its shares. Appellants admit there is more than one way to value the shares of Moto's stock and are not claiming any actual damages.

On March 13, 2015, the trial court granted Moto's Amended Motion for Summary Judgment. The trial court found Moto did not have a duty to inform Appellants of Casey's interest in acquiring Moto and that Appellants knew of Casey's interest because they were the parties who initiated discussion with Casey. The court held Moto did not have a duty to buy back shareholder stock or, if it did so, to value the shares in any particular manner. The court further found the valuation method used by Moto's Board was protected by the business judgment rule. This appeal follows.

Points Relied On

In their first point on appeal, Appellants argue the trial court erred in granting summary judgment to Moto because genuine disputes of material fact exist on the record, in that it is disputed whether Moto acted with reasonable care in its valuation.

In their second point on appeal, Appellants argue the trial court erred in granting summary judgment to Moto because the law does not permit Moto to value its shares in any manner it wishes, in that Moto voluntarily undertook the valuation and is a close corporation with a higher duty to shareholders than a public corporation.

In their third point on appeal, Appellants argue the trial court erred in granting summary judgment to Moto because applicability of the business judgment rule should have been decided at trial, in that it involves questions of fact such as whether the valuation was done in good faith.

Standard of Review

We review the circuit court's grant of summary judgment *de novo*. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717 (Mo. App. E.D. 2010). We will uphold summary judgment on appeal only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ITT Comm. Fin. Corp., 854 S.W.2d at 376; Rule 74.04(c). The record is viewed in the light most favorable to the party against whom judgment was entered. Robinson v. Lagenbach, 439 S.W.3d 853, 856 (Mo. App. E.D. 2014).

A defendant, as the movant, can establish a prima facie case for summary judgment by showing any of the following: (1) facts that negate any one of the elements of a claimant's cause of action; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's

6

elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support movant's properly pleaded affirmative defense. Sloss v. Gerstner, 98 S.W.3d 893, 896 (Mo. App. W.D. 2003).

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. Crow v. Crawford & Co., 259 S.W.3d 104, 113 (Mo. App. E.D. 2008). We will affirm the trial court's judgment if it is sustainable on any theory. Citibrook II, L.L.C. v. Morgan's Foods of Missouri, Inc., 239 S.W.3d 631, 634 (Mo. App. E.D. 2007).

<u>Discussion</u>

<u>Points I and II – Shareholder Oppression</u>

Dissolution of a corporation is an equitable action in which jurisdiction is granted by statute. Struckhoff v. Echo Ridge Farm, Inc., 833 S.W.2d 463, 466 (Mo. App. E.D. 1992).

Section 351.494[3] provides in relevant part as follows:

The circuit court may dissolve a corporation:
…
(2) In a proceeding by a shareholder if it is established that:
…
(b) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent;
…

"Dissolution of a corporation is a drastic remedy and courts should resort to this procedure only to prevent irreparable injury, imminent danger of loss or a miscarriage of justice." Struckhoff, 833 S.W.2d at 466. Before exercising its discretion, the trial court should consider the effect the dissolution would have on the public as well as the

[3] All statutory references are RSMo. 2006.

7

shareholders.  Id.  Once the requisite showing is made, a court of equity can take jurisdiction of the cause and then exercise its discretion in granting or refusing equitable relief.  Id.

A successful claim of shareholder oppression requires a showing of (1) burdensome, harsh, and wrongful conduct; (2) a lack of probity and fair dealing in the affairs of the company to the prejudice of some of its members; or (3) a visible departure from the standards of fair dealing and a violation of fair play on which every shareholder is entitled to rely when entrusting her money to a company.  Robinson, 439 S.W.3d 859. The existence of shareholder oppression is determined on a case-by-case basis.  Id. "Allegations of oppressive conduct are analyzed in terms of fiduciary duties owed by directors or controlling shareholders to minority shareholders."  Whale Art Co., Inc. v. Docter, 743 S.W.2d 511, 514 (Mo. App. E.D. 1987), citing Fix v. Fix Material Co., Inc., 538 S.W.2d 351, 358 (Mo. App. 1976).  "Although controlling shareholders are not fiduciaries in the strict sense, the general concepts of fiduciary law are useful in measuring the conduct of those in control, particularly in the context of a small closely-held corporation."  Whale Art Co., Inc., 743 S.W.2d at 514.  "The complaining shareholder has the burden of proof to establish grounds for dissolution."  Churchman v. Kehr, 836 S.W.2d 473, 482 (Mo. App. S.D. 1992).

Under Count I of their Second Amended Petition, Appellants sought dissolution of Moto based on shareholder oppression.  On appeal, Appellants have abandoned their claim regarding the Board's alleged failure to inform them of Casey's interest in acquiring Moto and now claim dissolution of Moto is appropriate based solely on the allegation that the Board arbitrarily valued Moto's stock.  Appellants assert such act was

8

burdensome, harsh and wrongful conduct and a visible departure from the standards of fair dealing and a violation of fair play.

In their Points I and II on appeal, Appellants argue summary judgment is improper because Moto, as a closely held corporation, has a fiduciary duty to use reasonable care in valuing its stock and genuine disputes of material fact exist as to whether Moto's Board acted with reasonable care. Appellants assert the Board should have used a different method of valuation and that they were induced to sell their shares at "lower than their true worth," yet acknowledge they are not claiming any actual damages. In challenging Moto's selected form of valuation, Appellants repeatedly speak in terms of negligence, reasonable care and due diligence. Appellants also contend the Board's use of the "vague" term "theoretical market value" was a confusing misrepresentation and a violation of its fiduciary duty.

Appellants' claim, however, is one of shareholder oppression not negligence, negligent or fraudulent misrepresentation, or breach of fiduciary duty.[4] While alleged oppressive conduct is analyzed in terms of fiduciary duties, a claim of shareholder oppression is more than mere negligence or lack of reasonable care; it is burdensome, harsh, and wrongful conduct; it is a lack of probity and fair dealing resulting in prejudice; it is a visible departure from the standards of fair dealing and a violation of fair play. Robinson, 439 S.W.3d at 859.

Appellants do not dispute that Moto had no independent obligation to appraise its stock or to repurchase its stock from them. See Section 351.455 (providing minority shareholder entitled to an appraisal of his shares when he dissents from a merger or

---

[4] Appellants' claims of breach of fiduciary duty of loyalty and good faith and fair dealing against individual officers and shareholders were dismissed in the trial court. Appellants have not appealed those dismissals.

consolidation of corporation) and Delahoussaye v. Newhard, 785 S.W.2d 609, 611 (Mo. App. E.D. 1990)(no statute or case law holding minority shareholders are entitled to ratable redemption where directors redeem some outstanding shares). Here, neither Moto's corporate by-laws nor any other written agreement requires Moto to repurchase its stock or to do so at a specific price.

Furthermore, in the absence of actual fraud, the judgment of a board of directors as to the value of the consideration received for stock will not be interfered with. See Saigh v. Busch, 403 S.W.2d 559, 564-65 (Mo. 1966) (rejecting minority shareholder argument that corporate board had no discretion to sell corporate shares pursuant to a stock option for anything other than market price) and Section 351.185(3) ("When payment of the consideration for which shares are to be issued shall have been received by the corporation, the shares are full-paid and nonassessable. In the absence of actual fraud in the transaction, the judgment of the board of directors or the shareholders, as the case may be, as to the value of the consideration received for shares shall be conclusive.").

Here, Appellants do not allege Moto's actions in valuing the stock were fraudulent, only that the Board failed to take reasonable care. Although Appellants contend reasonable care was required because Moto assumed a duty by voluntarily valuing its shares, this assertion is not legally supported. Appellants' criticisms of the valuation method chosen by the Board do not amount to a showing of oppressive conduct and Appellants have not produced any evidence demonstrating the valuation method was oppressive.

The Board's alleged failure to take reasonable care in choosing a valuation method and in using "vague" terminology to describe the resulting value is not sufficient evidence of "oppressive" conduct. The trial court did not err in finding Moto did not have a duty to value its shares for the purposes of repurchasing its stock or to use an alternative method of valuation when doing so. The trial court did not err in granting Moto's amended motion for summary judgment. Appellants' Points I and II are denied.

Point III − Business Judgment Rule

In their final point, Appellants argue the trial court erred in granting summary judgment in favor of Moto based on the business judgment rule because application of the rule involves questions of fact and is incompatible with entry of summary judgment.

The business judgment rule protects the directors and officers of a corporation from liability for *intra vires* decisions within their authority and made in good faith, uninfluenced by any consideration other than an honest belief that the action promotes the corporation's best interest. Robinson, 439 S.W.3d at 860. "'The [] rule vests the directors and shareholders with wide latitude in making judgments that affect the running of the corporation.'" Ironite Products Co., Inc. v. Samuels, 17 S.W.3d 566, 573 (Mo. App. E.D. 2000), quoting Herbik v. Rand, 732 S.W.2d 232, 235 (Mo. App. 1987). "The rule precludes courts from interfering with the decisions of corporate officers and directors absent a showing of fraud, illegal conduct, an *ultra vires* act, or an irrational business judgment." Robinson, 439 S.W.3d at 860.

On appeal, Appellants argue the trial court's application of the business judgment rule was inappropriate because it required factual determinations regarding the Board's motivations in valuing the stock and an assessment of the propriety of Moto's actions.

11

Appellants, however, have failed to set forth facts or argument that would support a finding that Moto's actions violated the business judgment rule. Appellants acknowledge there are multiple ways for a close corporation to value its stock and Appellants' bald assertion that Moto should have used an alternative method to do so does not suggest fraud, illegal conduct, an *ultra vires* act, or an irrational business judgment. The trial court did not err in finding the Board's method of valuation was protected by the business judgment rule. Appellants' Point III is denied.

<u>Conclusion</u>

The trial court's judgment granting Moto's Amended Motion for Summary Judgment is affirmed.

SHERRI B. SULLIVAN, J.

Lisa S. Van Amburg, C.J., and
Kurt S. Odenwald, J., concur.

12