

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| JEANETTE LAYTON | ) | No. ED111924 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | Cause No. 20SL-CC04119 |
| | ) | |
| vs. | ) | Honorable John N. Borbonus |
| | ) | |
| | ) | |
| MERCY HOSPITAL EAST COMMUNITIES | ) | FILED: June 18, 2024 |
| ET AL, | ) | |
| | ) | |
| Respondents. | ) | |

### Opinion

In this Missouri Human Rights Act (MHRA) age discrimination in employment case, the dispositive issue is whether the Respondents are corporations "owned or operated" by a religious organization, i.e., the Roman Catholic Church (the Church) such that they are deemed to be an excluded employer from MHRA liability pursuant to § 213.010(8).[1]  In her first of two points on appeal, Appellant Jeanette Layton (Layton) argues that whether her employer was owned or operated by a religious organization is a genuinely disputed fact question appropriate only for a jury to decide, and thus the circuit court erred in granting summary judgment to Respondents.

---

[1] All statutory references are to RSMo (Supp. 2017), unless otherwise indicated.  Respondents is used collectively to discuss the various entities sued by Layton.  The name of an individual Respondent is used when appropriate.

Under the factors established by the court in *St. Louis Christian Home v. Missouri Comm'n on Human Rights*, 634 S.W.2d 508, 513 (Mo. App. W.D. 1982), for determining whether an employer is "owned or operated" by a religious organization, which we find controlling, Respondents indeed are "operated" by a religious organization as a matter of undisputed fact on this record. Thus, Respondents are excluded from coverage under the MHRA, cannot be sued under that statute, and summary judgment is warranted.

In her second point, Layton argues the circuit court should not have entered summary judgment because Respondents violated Supreme Court Rule 74.04[2] in certain respects involving citations to the record. We disagree. Our review of the summary judgment record indicates that Respondents complied with the rule. Accordingly, we affirm the circuit court's grant of summary judgment.

## Background

On October 1, 2018, Layton filed a complaint with the Missouri Commission on Human Rights (Commission) alleging Respondents unlawfully discriminated against her due to her age. When the Commission did not complete its administrative processing of Layton's complaint within the 180 days set forth in § 213.111.1, Layton wrote the Commission requesting a right-to-sue letter.[3] Instead, on August 2, 2019, the Commission issued a "notice of termination of proceedings" to Layton, indicating that it had determined it lacked jurisdiction over the matter because Respondents were exempted from coverage by the MHRA. On August 30, 2019, Layton filed a petition for writ of mandamus seeking to compel the Commission to rescind the closure of its file and to issue Layton a notice of right-to-sue. The circuit court granted the writ.

---

[2] All Rule references are to Mo. R. Civ P. (2023) unless otherwise indicated.
[3] A right-to-sue letter pursuant to § 213.111 is issued by the Commission and is a prerequisite to a complainant filing an action in the circuit court.

The Commission and Respondents appealed, and the court of appeals affirmed the circuit court's judgment ordering the Commission to issue Layton a right-to-sue letter and to vacate its proceedings relating to the complaint after the 180-day period had passed. *State ex rel. Layton v. Missouri Comm'n on Human Rights*, 647 S.W.3d 301, 310 (Mo. App. W.D. 2022).

On August 11, 2020, Layton sued Mercy Health and Mercy Hospitals East Communities in the Circuit Court of St. Louis County. Layton alleged she was an employee of Mercy Health and Mercy Hospitals East Communities and that she was discharged due to her age in violation of the MHRA. In their answer, Respondents denied they were subject to the MHRA and asserted that MHM Support Services, a Missouri nonprofit corporation, was actually Layton's employer *not* Mercy Health or Mercy Hospitals East Communities as Layton had alleged.

On November 10, 2022, the court granted Respondents' motion to bifurcate discovery so that the court could first determine the threshold issue of whether Respondents were owned or operated by a religious organization. Following a course of discovery on that issue, Respondents moved for summary judgment and argued they were excluded from the statute's coverage on that basis. Layton amended her pleadings adding MHM Support Services and Mercy Clinic East Communities (Mercy Clinic) as defendants. The circuit court then granted Respondents' motion for summary judgment following a hearing. This appeal follows.

<u>Standard of Review</u>

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). The circuit court makes its decision regarding summary judgment based on the pleadings, the record submitted, and the law. *Id.* Our review of whether summary judgment was proper is de novo and based on the same criteria. *Id.* The moving party has the

3

burden to establish a right to judgment as a matter of law based on the record submitted. *Robinson v. Lagenbach*, 439 S.W.3d 853, 856 (Mo. App. E.D. 2014) (citing *ITT Commercial Fin. Corp, v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "[F]acts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Fotoohighiam*, 606 S.W.3d at 116.

A genuine issue "exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts," and "[w]here the 'genuine issues' raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper." *A&M Bldg., Inc. v. Wiles*, 859 S.W.2d 183, 188 (Mo. App. S.D. 1993) (quoting *ITT Comm. Fin. Corp.*, 854 S.W.2d at 382)).

Discussion

I.  Layton's employer is operated by a religious organization.

In Layton's first point on appeal, she contends Respondents failed to demonstrate as a matter of undisputed fact that her employer was owned or operated by a religious institution under § 213.010(8), so as to exempt Respondents from MHRA coverage. We disagree and find that Respondents have carried their burden on this issue and summary judgment is proper.

At the outset we note that in her brief to this Court, Layton failed to address whether the other three entities she sued—Mercy Health, Mercy Hospitals East Communities, or MHM Support Services—were owned or operated by a religious organization. Thus, Layton has abandoned her arguments on appeal as to these entities. *See De Mere v. Missouri State Highway Comm'n*, 876 S.W.2d 652, 654 (Mo. App. W.D. 1994) (quoting *Charles Palermo Co. v. Wyant*, 530 S.W.2d 15, 17 (Mo. App. K.C.D. 1975) ("where the plaintiff appeals against more than one

4

defendant and only briefs alleged error in regard to one defendant, the appeal against the other defendant is deemed abandoned.")). Accordingly, our analysis here is limited to whether as a matter of undisputed fact Mercy Clinic is a corporation owned or operated by a religious organization.

The MHRA, in relevant part, makes it unlawful for an employer to discharge an employee on the basis of the individual's age. § 213.055.1(1)(a). The MHRA exempts "employers" from liability if they are "corporations and associations owned or operated by religious or sectarian organizations." § 213.010(8). Critical to our decision here is the legislature's 2017 amendment which changed the language from "owned *and* operated" to "owned *or* operated." This amendment occurred after the Missouri Supreme Court's decision in *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 592 (Mo. banc 2013), and appears to have addressed the holding in *Farrow* in which the Court held that non-profit organizations cannot be "owned."[4] Thus, post-*Farrow*, a non-profit employer affiliated with a religious organization could never satisfy the "owned" prong of § 213.010(8).

Therefore, the heart of the issue before us is whether the Church "operated" Mercy Clinic as that term is used in § 213.010(8). To arrive at our answer to this question we look to our well-worn rules of statutory construction, the summary judgment record, and the seminal case of *Christian Home*.

"The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *State ex rel. Young v. Wood*, 254 S.W.3d 871,

---

[4] In *Farrow*, the Missouri Supreme Court held that non-profits organized under Chapter 355 could not be "owned" by anyone or anything, based on the plain and unambiguous language of § 213.010(7), and thus, could not qualify for the statutory exclusion and escape potential liability under the MHRA. However, the court did not determine whether, or to what extent, Saint Francis Medical Center was "operated" by a religious group because the exclusion required proof of the conjunctive "owned *and* operated" by that religious group at the time.

872–73 (Mo. banc 2008). Although the term "operate" has multiple definitions, "*operate* is no more technical than *own*" and is not ambiguous. *Christian Home*, 634 S.W.2d at 512. Thus, the term "operate" should be given its plain and ordinary meaning and "gives no occasion for construction." *Id.* The *Christian Home* court noted one plain and ordinary meaning of "operate," which it took from the Oxford English Dictionary, "to direct the working of, to manage, or to conduct." *Id.* at 511 n.1.

The factors employed by the court in *Christian Home*[5] to determine whether an employer is "operated" by a religious institution are as follows: (1) who founded the corporation; (2) whether the corporation received funds from the religious organization; (3) whether the corporation is subject to supervision and control of the religious organization (not only to programs, but also designation of officers, directors, and other functionaries); (4) whether the articles of incorporation and bylaws are subject to prior approval by the religious organization; and (5) whether the religious organization supervises daily operations (to include investing the corporation's funds, attending to the corporation's accounting functions, undertaking capital improvements at the corporation's facilities, among numerous other controls). Following its detailed analysis of the record vis-à-vis those factors, the *Christian Home* court concluded that the religious organization in that case "operated" St. Louis Christian Home. *Id.* at 513.

This framework was also followed by the federal district court in *Young v. St. John's Mercy Health System*, 2011 WL 9155 *4 (E.D. Mo. Jan. 3, 2011). In this summary judgment case, the court addressed St. John's Mercy Health System's argument that it was an excluded

---

[5] Missouri's employment discrimination statute, applicable to the facts in *Christian Home*, was known as the Discriminatory Employment Practices Act and was codified in chapter 296 of the revised statutes. That Act was repealed in 1986 and Chapter 213 was amended to include the subject matter of the repealed provisions. *Missouri Comm'n on Human Rights v. City of Sikeston/Sikeston Power Plant/Bd. of Mun. Utilities*, 769 S.W.2d 798, 800 n.1 (Mo. App. S.D. 1989).

6

employer under the MHRA because it was owned and operated by a religious group. *Id.* The court agreed, following its analysis of factors similar to those established in *Christian Home* such as "the corporate makeup of Defendant and its parent companies, the parties in control of defendant's operations, and the articles of incorporation identifying Defendant's corporate purposes as a nonprofit corporation operating for religious purposes[.]" *Id.* at *5.

Similarly, the federal district court in *Wirth v. College of the Ozarks*, 26 F.Supp.2d 1185, 1187–88 (W.D. Mo. 1998), applied several of the *Christian Home* factors in its holding that College of the Ozarks was exempt from the MHRA and therefore not subject to a former employee's suit for age and religious discrimination. The *Wirth* court focused on the following factors: (1) the college was founded by the Presbyterian Church Synod; (2) the college was incorporated as a not-for-profit corporation; (3) the charter mission included providing religious education; and (4) it was a member of religious associations. *Id.* at 1187. The *Wirth* court went so far as to state that even if the court disregarded the plain language of § 213.010(6) of the MHRA, the purpose of the exemptions was clearly encompassed by the facts of the case. *Id.* at 1188.

Turning now to the record here, we examine the factors set forth in *Christian Home, Young, and Wirth* in the context of the summary judgment record before us. Our references to the record are limited to those matters that are properly part of the record and constitute competent evidence with adequate foundation for our consideration. *Fotoohighiam*, 606 S.W.3d at 117–18.

1.  Corporate Founders:

Sister KM, a catholic nun, testified that the Sisters of Mercy religious organization founded Respondents as healthcare institutions. Sister KM noted that the Sisters of Mercy

7

petitioned the Vatican to allow the creation of Mercy Health Ministry as a public juridic person that would take control over its healthcare institutions and would report to the Vatican. Respondents' summary judgment record includes the May 2008 Vatican document granting Mercy Health Ministry public juridic person status.[6]

2.  Corporate Structure:

Respondents' undisputed evidence demonstrates that the Church is at the top of their corporate structure.  The affidavit of their Vice President of Accounting (Accounting VP) explained that their non-profit parent company is Mercy Health, which is owned, operated, and governed by Mercy Health Ministry, the foregoing public juridic person.

Again, through Accounting VP's affidavit and deposition testimony, Respondents established that Layton's direct employer was MHM Support Services, which in turn leased her services to Mercy Clinic, where she worked as a physician practice manager at the time of her discharge in 2018.  The affidavit explained that Layton's W-2 states "MHM Support Services" but that the entity for whom Layton performed work was Mercy Clinic.

For her part, Layton asserted to the circuit court that she was not employed by MHM Support Services.  Laying aside that Layton has abandoned this argument here regarding MHM Support Services, the assertion is immaterial because Respondents have demonstrated that both MHM Support Services and Mercy Clinic are operated by the Church through its public juridic person, Mercy Health Ministry.

---

[6] According to canon law, the church contains entities known as juridic persons, which are either aggregates of persons or things and include four essential elements:
> (1) an aggregate of persons or things; (2) an artificial entity distinct from the physical persons who constitute it, administer it, or benefit from it; (3) established either by the law itself or by a competent ecclesiastical authority for pious, apostolic, or charitable purposes; and (4) endowed with juridic capacity, in the sense that it is a subject of rights and obligations in the Church.

Rev. Edward L. Buelt & Charles Goldberg, *Canon Law & Civil Law Interface: Diocesan Corporations*, 36 Cath. Law 69, 71–72 (1995).

Moreover, this record is replete with citations to the affidavit of Senior VP of Mission & Community Health for Mercy Health (Senior VP) that Mercy Hospitals East Communities is the "wholly-owned subsidiary" of Mercy Health East Communities, which is the wholly-owned subsidiary of Mercy Health, i.e., the legal mechanism through which Mercy Health Ministry and the Church operate.

3. Corporate Funding:

In his affidavit, Senior VP also stated Mercy Health receives funding from the Church and provides funding back to the Church through various Church dioceses.

4. Corporate Control and Governance:

Respondents established the Church's substantial corporate control and governance over Layton's employer by way of the Vatican's grant of public juridic person status. The record, including Senior VP's affidavit, established that Mercy Health acts in the name of the Church and its temporal goods belong to the Church, such that the Church must approve all transactions before any of Mercy Health's property or goods are sold or otherwise divested.

In accordance with an April 2008 Religious Governance Agreement, attached as an exhibit to Senior VP's affidavit, the Religious Sisters of Mercy assume various governance roles and functions within Respondents, including serving on Respondents' board of directors. Mercy Health Ministry board members dually serve as the board members of Mercy Health.

5. Corporate Bylaws and Articles of Incorporation:

The record includes Mercy Health's bylaws which provide that Mercy Health operates with a religious purpose, "to carry forward the healing ministry of Jesus in the Church through the management, ownership, or sponsorship of health care facilities, programs and services consistent with the teaching and laws of the Church regarding Catholic health services and with

9

traditions, values and enduring concerns of the Sisters of Mercy . . ." The bylaws require Mercy Health Ministry and Mercy Health to have the same board of directors. Certain directors must be Catholic and "shall be a woman religious Sister of Mercy so long as there are Sisters willing, able and qualified to serve."

6. Not-for-Profit Corporate Status:

The bylaws also provide that Mercy Health is "organized exclusively for religious, charitable, scientific and educational purposes within the meaning of § 501(c)(3) of the IRS Code of 1986, as amended . . ." The articles of incorporation, also an exhibit to Senior VP's affidavit, provide the same. Respondents established they were tax-exempt, non-profit 501(c)(3) health care corporations. The record includes a letter from the United States Conference of Catholic Bishops' Office of General Counsel recognizing Mercy Health's status as a tax-exempt, non-profit organization.

7. Corporate Mission:

Mercy Health's mission statement includes the phrase, "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service." The bylaws provide that Mercy Health "shall adhere to and be guided by the Ethical and Religious Directives for Catholic Health Services of the National Conference of Catholic Bishops . . . and by the philosophy, mission, and traditions of the Sisters of Mercy." Over and above that, the Ethical and Religious Directives for Catholic Health Services of the National Conference of Catholic Bishops (ERDs) provide that "Employees of a Catholic health care institution must respect and uphold the religious mission of the institution and adhere to these Directives." A copy of the 2009 ERDs (Fifth Edition) and the 2018 ERDs (Sixth Edition) are part of the summary judgment record.

The uncontroverted record also establishes that all employees were informed during orientation that Mercy Health observes the moral principles as set out in the ERDs. Mercy Health established an extensive "Formation" toolkit to educate and inspire its employees to "create culture that honors the Mercy Health tradition and the legacy of founding Sister of Mercy, Catherine McAuley," and "the healing ministry of Jesus." The Formation resources, Mercy Health's intranet site for coworkers, and Mercy Health's Mission and Values are part of this record.

What is more, Mercy Health creates a prayerful and healing environment by providing spaces on site for private and communal worship and reflection and by asking employees to pause for prayer broadcast over the public address system or to participate in prayers during meetings or team huddles. Further, photographs in the record demonstrate that Mercy Health's facilities display crucifixes, images of Jesus, religious statutes, art and story boards, and Scriptural images and quotes throughout, including in patient rooms.

Given the overwhelming evidence that Mercy Clinic is excluded from MHRA coverage because it is "operated" by a religious organization, we turn now to Layton's response and we are unpersuaded that she has created a genuine dispute of fact on this question.

Layton's principal factual assertion is that Mercy Clinic is a "physician-governed group of more than 2,000 medical providers[.]" While this may be true, it does not undermine the undisputed record here that Respondents, including Mercy Clinic, are operated by the Church. Thus, Respondents' motion for summary judgment was properly granted. Layton's first point on appeal is denied.

II.  Respondents complied with Rule 74.04

We now turn to Layton's second point on appeal in which she alleges that summary judgment is not warranted because Respondents violated Supreme Court Rule 74.04. Specifically, Layton contends that Respondents combined into one numbered paragraph all material facts supporting their claim but failed to specify which evidence supported which material fact within the numbered paragraph framework required by the rule.  We disagree.

Rule 74.04 mandates the movant attach to its motion for summary judgment a statement of uncontroverted material facts which "shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts."  The rule requires all discovery, exhibits or affidavits on which the motion relies also be attached to the statement of uncontroverted material facts.  Rule 74.04(c)(1).  This rule places the burden on the parties to identify the issues in dispute with a numbered paragraph for each fact because the court has no obligation to look outside the referenced and attached discovery, exhibits, and affidavits to determine whether the party moving for summary judgment satisfied its prima facie case.  *Fotoohighiam*, 606 S.W.3d at 118; *Great S. Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 833 n.6 (Mo. App. S.D. 2016).

Layton complains that Respondents should have separated out into individual paragraphs the fact that the employer is a corporation, that the employer is owned or operated by an organization, that the organization is religious or sectarian, and that she should have done so for each corporation.[7]  Layton cites *Finley v. St. John's Mercy Medical Center*, for the proposition

---

[7] Layton also complains Exhibit A's jurat relates to a four-page, twenty-two paragraph document, but the document to which the witness, Senior VP, swore, was fourteen pages and fifty-nine paragraphs, thus, the author did not swear to the truthfulness of Exhibit A and Exhibit A does not qualify as record support.  We disagree and find the typographical error in preparing the affidavit does not render it void.

12

that "[d]ifferent material facts cannot be lumped together in a single paragraph" and that the movant "*must give specific* reference to supporting documentation that demonstrates 'the lack of a genuine issue as to such facts.'" *Finley v. St. John's Mercy Medical Center*, 903 S.W.2d 670, 672 (Mo. App. E.D. 1995) (quoting *Snelling v. Bleckman*, 891 S.W.2d 572, 573 (Mo. App. E.D. 1995) (quoting Rule 74.04(c)(1))). The *Finley* court found the motion for summary judgment failed to set forth each material fact in separately numbered paragraphs and failed to reference supporting documentation, nor did the motion for summary judgment "state with particularity" the grounds for summary judgment. *Id.*

Conversely here, Respondents have incorporated both separately numbered paragraphs and evidence from the record, including affidavits, exhibits, and discovery depositions. Respondents further cited their documentation with specific references to exhibits, paragraphs of affidavits and page numbers and line numbers to testimony. This statement of uncontroverted material facts fully complies with the requirements of Rule 74.04 and we were satisfactorily able to review the record and arguments. Layton's second point on appeal is denied.

## Conclusion

For the reasons set forth above, the judgment of the circuit court is affirmed.

_____
Rebeca Navarro – McKelvey, J.

Thomas C. Clark, II., C.J., and
Cristian M. Stevens, J., concur.