

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| JOAN L. ROBINSON, | ) | Nos. ED106781, ED106804 |
| | ) | |
| Respondent/Cross-Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 12SL-CC02302-01 |
| | ) | |
| JOHN F. LANGENBACH, JUDY LANFRI | ) | |
| f/k/a JUDY LONGBROOK, and | ) | |
| PERMA-JACK COMPANY, | ) | Honorable Kristine Allen Kerr |
| | ) | |
| Appellants/Cross-Respondents. | ) | Filed: April 23, 2019 |

### Introduction

In these consolidated appeals following a bifurcated civil suit for damages and equitable relief, John F. Langenbach ("Langenbach"), Judy Lanfri f/k/a/ Judy Longbrook ("Lanfri"), and Perma-Jack Company ("PJC") (together, "Appellants") appeal from both the trial court's entry of judgment pursuant to a jury verdict awarding damages to Joan L. Robinson's ("Robinson") on her claim for breach of fiduciary duty, and from the trial court's judgment after a bench trial awarding Robinson equitable relief on her claim of shareholder oppression. Likewise, Robinson appeals from the trial court's judgment determining the value of her stock in her shareholder oppression claim, and from the trial court's judgment granting Appellants' counterclaim for

injunctive relief to remove signage bearing the PJC trademark from her property, denying pre-judgment interest on the stock award, and denying her request for attorneys' fees. We affirm.[1]

Background

This case is before this Court for the second time. We previously summarized the factual background as follows. In 1975, George Langenbach incorporated PJC, a franchisor of a foundation steel-piering system. Robinson, Langenbach, and Lanfri are George Langenbach's children. In 1988, Robinson, Langenbach, and Lanfri were named as the company's three directors and granted shares of the company in equal portions. *Robinson v. Lagenbach*,[2] 439 S.W.3d 853, 855 (Mo. App. E.D. 2014) ("*Robinson I*"). Before June 20, 2012, Robinson served as president and treasurer of PJC, and Langenbach served as vice president and secretary. Lanfri had no role in the day-to-day operations of PJC. *Id.* Differences developed among the parties concerning the management and direction of the company, and Langenbach asked Robinson to resign, but she refused. At a special meeting of the Board of Directors ("the Board") on June 20, 2012, Langenbach and Lanfri voted to remove Robinson as president and treasurer of PJC. Her employment was terminated on that date. Langenbach and Lanfri then voted to appoint Langenbach as president. The Board later appointed Langenbach's daughter Jessica Langenbach as secretary of PJC, and PJC later hired Langenbach's other daughter Alexis Langenbach on a part-time basis. *Id.*

In *Robinson I*, Robinson sued the Appellants for breach of fiduciary duty and for dissolution of the company or other equitable relief based on shareholder oppression. The trial

---

[1] Robinson's Motion to Strike was taken with the case, and we deny it as moot.

[2] Although the case name is spelled *Robinson v. Lagenbach*, this appears to be a typographical error, as Langenbach is spelled correctly throughout the body of the case. 439 S.W.3d 853 (Mo. App. E.D. 2014).

court granted the defendants' motion for summary judgment, and denied Robinson's motion for partial summary judgment without issuing findings of fact or conclusions of law. *Id.* at 855-56. On appeal, this Court held that, as a two-thirds majority of the Board, Langenbach and Lanfri had the authority to vote to remove Robinson as president and treasurer of PJC, and this authority was not impacted by the voting trust. However, we also held the trial court erred in granting summary judgment on the issues of shareholder oppression, breach of fiduciary duty by Langenbach and Lanfri as directors and controlling shareholders, and application of the business-judgment rule because there remained disputed issues of material fact. *Id.* at 858-61.

Following remand, Robinson filed a Third Amended Petition for Equitable Relief and Damages against Appellants, asserting (1) shareholder oppression and (2) breach of the fiduciary duty owed by Langenbach and Lanfri, as Directors and shareholders in control of PJC, to Robinson, individually, as the minority shareholder, by terminating her employment with PJC.[3] With her Third Amended Petition, she filed a motion for separate trials to bifurcate her equitable action for shareholder oppression, which would be determined by the trial court, from the action for damages on the claim for breach of fiduciary duty, which would be determined by a jury. The trial court granted the motion for separate trials.

Appellants pleaded multiple affirmative defenses, including, as relevant on appeal, that (1) Robinson failed to allege the elements of shareholder oppression; (2) her allegations were barred by the business judgment rule because Langenbach and Lanfri both acted with the honest belief that their actions were in the best interest of PJC; (3) Langenbach and Lanfri had the authority to terminate Robinson's employment whenever in their judgment the best interests of

---

[3] Robinson also pleaded a derivative claim on behalf of PJC alleging breach of fiduciary duty by Langenbach and Lanfri, but the trial court granted Appellants' Motion for Directed Verdict on this claim at the close of Robinson's evidence at trial. Robinson does not appeal the trial court's ruling on this issue.

PJC would be served; and (4) she had no right to continued employment based on her status as a shareholder, but rather, as determined in *Robinson I*, Langenbach and Lanfri had the authority to terminate her. As well, Appellants filed a counterclaim for injunctive relief, alleging Robinson had refused to remove a Perma-Jack sign from the former location of PJC headquarters at 9052 Watson Road, Crestwood, Missouri ("the Watson Property"), which was owned by NANAPA, LLC, a limited liability company owned and managed by Robinson. Appellants asserted this refusal constituted an infringement on PJC's trademark and false designation of origin under 15 U.S.C. § 1051 et seq. and Section 417.010 et seq., in that Robinson's continued use of the sign caused confusion for PJC's clients and customers and damaged the reputation and image of PJC in the community.

Before the February 2017 jury trial on the breach-of-fiduciary-duty claim, Appellants filed a motion in limine to preclude Robinson from arguing or introducing evidence that, as relevant to this appeal, the salaries paid to Langenbach and his daughters, Jessica and Alexis, were too high or should be different. The trial court denied the motion in limine on this ground. The parties proceeded to trial on Robinson's claim for breach of fiduciary duty by Langenbach and Lanfri against her as a stockholder. At the close of Robinson's evidence, Appellants moved for a Directed Verdict, which the trial court denied.

At the close of trial, the jury was instructed to find in favor of Robinson if it believed:

> First, defendants John Langenbach and Judy Lanfri removed plaintiff Joan Robinson from Perma-Jack Company; and
>
> Second, defendants John Langenbach and Judy Lanfri did not believe, in good faith, that their removal of plaintiff Joan Robinson was in the best interests of the company; and
>
> Third, plaintiff Joan Robinson was thereby damaged.

4

The jury returned a verdict in favor of Robinson and against Langenbach and Lanfri, and it awarded her $390,000.00. On February 16, 2017, the trial court entered judgment in accordance with the jury verdict.

Appellants filed a motion to dismiss, vacate, or set aside the judgment and a motion for judgment notwithstanding the verdict ("JNOV"), and they also moved for a new trial, asserting that the trial court erred in admitting certain evidence and that the jury's verdict was against the weight of the evidence. Robinson opposed the motions, and the trial court denied Appellants' motions.

On October 26 and November 1, 2017, the trial court held a bench trial on Robinson's equitable claim for shareholder oppression, and on Appellants' equitable claim requesting Robinson remove a sign bearing the PJC trademark from the Watson property. The trial court issued a Memorandum, Order and Judgment on February 13, 2018, concluding Appellants' termination of Robinson constituted shareholder oppression, and their actions were not shielded by the business judgment rule because the actions were not conducted in good faith. For its remedy, the trial court ordered Langenbach and Lanfri to purchase Robinson's shares of PJC stock for $59,000.00, plus post-judgment interest at the rate of 9% per annum from the date of the February 13, 2018 judgment; however, the trial court denied Robinson's request for attorneys' fees and for equitable relief to compensate her for PJC's indemnification of Langenbach and Lanfri's attorneys' fees. On Appellants' counterclaim, the trial court ordered Robinson to remove within 30 days any signage bearing the PJC trademark. Robinson moved to amend the judgment to include pre-judgment interest at the rate of 9% per annum from the date of June 20, 2012, the date of Robinson's termination. The trial court denied Robinson's request for pre-judgment interest.

5

Appellants appealed, arguing the trial court erred in denying their motion for directed verdict and their motion for JNOV after the February 2017 jury verdict, because they were entitled to judgment as a matter of law on their affirmative defenses that Robinson's status as a shareholder provided no fiduciary-rooted right to continued employment; the trial court abused its discretion in admitting evidence of the salaries of Langenbach, Jessica Langenbach, and Alexis Langenbach; and the trial court erred in finding shareholder oppression after the October/November 2017 bench trial.[4]

Likewise, Robinson appealed, arguing the trial court erred in determining the value of her shares of PJC stock by applying both a marketability discount and a minority discount; the trial court abused its discretion in using June 20, 2012, as the valuation date for the PJC stock; the trial court erred in failing to award her pre-judgment interest; the trial court erred in denying Robinson equitable relief for PJC's indemnification of Appellants' defense costs and in denying her request for attorneys' fees; and, finally, the trial court erred in ordering her to remove signage bearing the PJC trademark. These appeals were consolidated before this Court.

1. *Appeal No. ED106781*

<u>Appellants' Points I and II</u>

In Appellants' first and second points on appeal, they argue the trial court erred in denying their motion for directed verdict and JNOV because they were entitled to judgment as a matter of law on their affirmative defense that Robinson's status as a shareholder did not entitle her to continued employment nor did her shareholding interest give rise to a fiduciary-based right to employment. We disagree.

---

[4] Appellants asserted two additional points, Points IV and V, on appeal that they voluntarily withdrew.

Our review here is limited to whether Robinson made a submissible case. *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 26 (Mo. App. E.D. 2013) (en banc). To make a submissible case, each element of a plaintiff's case must be supported by substantial evidence. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). Substantial evidence is evidence that, if true, would allow the trier of fact to reasonably decide the case. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 866 (Mo. App. E.D. 2009). We consider the evidence and all reasonable inferences in the light most favorable to the plaintiff, and we disregard all contrary evidence and inferences. *Keveney*, 304 S.W.3d at 104. We will reverse a jury's verdict only if there is a "complete absence of probative facts to support the jury's conclusion." *Id.*

Robinson here alleged a breach of the fiduciary duty owed by Langenbach and Lanfri, as Directors and shareholders in control of PJC, to Robinson, individually, as the minority shareholder, by terminating her employment with PJC. To prevail on a claim of breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; (3) causation; and (4) harm. *Brown v. Brown*, 530 S.W.3d 35, 41 (Mo. App. E.D. 2017). Whether a fiduciary duty exists between parties is a question of law, and whether a breach of that duty occurred is a question for the fact-finder to decide. W*estern Blue Print Co. v. Roberts*, 367 S.W.3d 7, 15 (Mo. banc 2012). Thus, here, Robinson had to produce evidence that Appellants owed her a fiduciary duty, they breached that duty, and the breach caused her harm.

The parties agree that officers and directors of a corporation have a fiduciary relationship with both the corporation and with the stockholders, which requires them "to exercise the utmost good faith in the discharge of the duties arising out of their trust, and to act for the corporation and its stockholders, giving all the benefit of their best judgment." *Waters v. G & B Feeds, Inc.*, 306 S.W.3d 138, 146 (Mo. App. S.D. 2010) (citation omitted). Further, officers of a closely held

7

corporation owe an even higher degree of fiduciary duty to shareholders than do their counterparts at public corporations. *Id.* at 146-47. Thus, substantial evidence supported a finding of a fiduciary duty by Langenbach and Lanfri to Robinson. Likewise, there is no question that the Board's termination of Robinson as president and treasurer of PJC caused her harm. The question for this Court on appeal is whether Langenbach and Lanfri breached their fiduciary duty to Robinson as a shareholder by terminating her employment.

Implicit in Langenbach and Lanfri's fiduciary duty to PJC and its stockholders, including Robinson, was to run PJC in accordance with its bylaws. *See Western Blue Print Co.*, 367 S.W.3d at 15 (fiduciary duty of officers and directors is to exercise good faith "when using the powers conferred upon them"); *Gieselmann v. Stegeman*, 443 S.W.2d 127, 136 (Mo. 1969) (company vice-president and shareholder violated fiduciary duty to other shareholders by not exercising powers conferred upon him in good faith and by seeking to personally profit at expense of other shareholders). Here, Article IV, Section 2 of PJC's bylaws provided that "[a]ny officer or agent appointed by the Board of Directors may be removed by the Board of Directors whenever in the judgment of the Board the best interests of the corporation will be served thereby."[5] Accordingly, the Board has a fiduciary duty to the corporation and the shareholders, including Robinson, to apply the bylaws, which in turn mandate that any removal of an officer must be predicated upon the Board's judgment that the removal will serve the best interests of the corporation. Whether a breach of an established fiduciary duty occurred is a question of fact

---

[5] Appellants argue in their Reply Brief that bylaws that are inconsistent with state law are void and must give way to the superior authority of the statute. *Swanger v. Nat'l Juvenile Law Ctr.*, 714 S.W.2d 170, 171-72 (Mo. App. E.D. 1986). However, Appellants concede that the bylaws here are patterned after Section 351.365, RSMo. (cum. supp. 2017). Thus, the bylaws here are consistent with Missouri law and *Swanger* does not apply. As discussed, this opinion does not hold a shareholder employee has a fiduciary-rooted right to employment that would be inconsistent with Section 351.365 or with the overall doctrine of at-will employment.

8

for the jury to decide. *See* W*estern Blue Print Co.*, 367 S.W.3d at 15. Therefore, there was no error in the trial court's decision denying the motion for direct verdict and submitting this issue to the jury.

Further, we note that although Langenbach and Lanfri's fiduciary duty was to all shareholders, because Robinson was uniquely harmed by her termination, her individual suit could proceed. *Nickell v. Shanahan*, 439 S.W.3d 223, 227 (Mo. banc 2014) ("[i]ndividual actions are permitted, and provide the logical remedy, if the injury is to the shareholders themselves directly, and not to the corporation") (citation omitted); *see also Gieselmann*, 443 S.W.2d at 131 (shareholders could maintain individual suit against directors or officers where they asserted wrongdoers seized control of corporation from complaining stockholders by fraud).

Likewise, the trial court did not err in denying JNOV on the issue of whether Appellants were entitled to their affirmative defenses that Robinson's status as a shareholder did not entitle her to continued employment or that her shareholder interest did not give rise to a fiduciary-based right to employment. These affirmative defenses mistake the issue. Robinson's right to present to the jury her claim of breach of fiduciary duty was not based in her right to continued employment due to her status as a shareholder. Rather, her claim is based in the Board's failure to comply with the bylaws, which, under controlling Missouri law, they have a fiduciary duty to the corporation and to the shareholders, including Robinson, to follow. We need not, therefore, address Appellants' argument whether to apply the case law of a minority of non-Missouri jurisdictions that a plaintiff's shareholder status does not give rise to a fiduciary-based right to employment for shareholders who are also at-will employees, *see, e.g.*, *Ingle v. Glamore Motor Sales, Inc.*, 535 N.E.2d 1311, 1312-13 (N.Y. App. 1989); and whether to apply the case law of a majority of non-Missouri jurisdictions that the fiduciary duty of majority shareholders towards

9

minority shareholders regarding termination from employment stems from their duty to protect the investment of the minority shareholders, *see, e.g.*, *Hollis v. Hill*, 232 F.3d 460, 470-71 (5th Cir. 2000). The outcome here is not decided by the issues raised in the cases cited by Appellants.

The Board did not have an unfettered right to terminate Robinson,[6] but they could only terminate her in accordance with their fiduciary duty to follow PJC's bylaws, and whether they did so is a question of fact for the jury to decide. *See* We*stern Blue Print Co.*, 367 S.W.3d at 15; *see also Robinson I*, 439 S.W.3d at 860 (reversing for further proceedings after holding that the question of whether Board's action violated its fiduciary duty to Robinson as minority shareholder required factual and credibility determinations by fact-finder). PJC's bylaws stated that any officer could be removed by the Board of Directors "whenever in the judgment of the Board the best interests of the corporation shall be served thereby." Robinson presented evidence at trial in support of her assertion that Langenbach and Lanfri did not believe in good faith that the best interest of PJC would be served by her termination, and the jury believed her evidence, as is their right. "The jury is the sole judge of credibility of witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony." *Keveney*, 304 S.W.3d at 105 (citation omitted). On review, we consider the evidence in the light most favorable to the verdict and will not reverse unless there is a "complete absence of probative facts to support the jury's conclusion." *Id.* at 104. Under our standard of review,

---

[6] To the extent Appellants argued below that the "law of the case" allowed the Board to terminate Robinson, *Robinson I* did not grant Langenbach and Lanfri an unfettered ability to terminate Robinson. Rather, in *Robinson I* the issue was whether the Board's action in terminating Robinson was barred by the voting trust, and this Court held the bylaws gave the Board the authority to terminate Robinson as president and treasurer, and this authority did not require approval by the voting trust. *Robinson I*, 439 S.W.3d at 857-58. As for the questions of whether the Board's action violated its fiduciary duty to her as a minority shareholder (i.e. to refrain from using their control to obtain a profit for themselves at the expense of the minority shareholder) or constituted shareholder suppression, *Robinson I* ruled those questions required factual and credibility determinations by the fact-finder, and we reversed accordingly. *Id.* at 860.

10

Robinson made a submissible case, and thus the trial court did not err in denying Appellants' motion for JNOV.

Appellants' Points I and II are denied.

<u>Appellants' Point III</u>

In their third point on appeal, Appellants argue the trial court abused its discretion in admitting evidence of the salaries of Langenbach, Jessica Langenbach, and Alexis Langenbach after Robinson's termination because they were not relevant to Robinson's claims but served only to prejudice and inflame the jury. We disagree.

A trial court has broad discretion in deciding whether to admit or deny evidence at trial, and we review merely for an abuse of that broad discretion, giving great deference to the trial court's evidentiary rulings. *Williams*, 281 S.W.3d at 872. An abuse of discretion occurs when the ruling is so against the logic of the circumstances, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* Our review is for prejudice, not mere error, and we will reverse only if the appellant demonstrates that the error was so prejudicial as to deprive him or her of a fair trial and there was a reasonable probability the trial court's ruling affected the outcome of the trial. *Id.*; *see also State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002).

Evidence must be both logically and legally relevant to be admissible. *Wilson v. Union Pac. R.R. Co.*, 509 S.W.3d 862, 874 (Mo. App. E.D. 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable than it would be without the evidence." *Id.* Likewise, evidence is legally relevant when the probative value of the evidence outweighs its costs, such as unfair prejudice, confusion of the issues, misleading the jury, undue

11

delay, waste of time, or cumulativeness. *Id.*; *Anderson*, 76 S.W.3d at 276. Thus, even logically relevant evidence can be excluded if its costs outweigh its benefits. *Anderson*, 76 S.W.3d at 276.

Robinson's theory of liability was that Appellants did not terminate her based on a good faith belief that it was in the best interest of PJC, but, rather, they terminated her in order for Langenbach and his children to take a greater portion of the profits for themselves, thus violating their fiduciary duty to all shareholders, including Robinson. The evidence Appellants sought to exclude was that: (1) in July 2012, the month after terminating Robinson, Langenbach raised the annual salary of his daughter Jessica Langenbach from $52,000 to $75,000; (2) in October 2012, Langenbach raised his own annual salary from $56,000 to $104,000; (3) in February 2013, he had PJC purchase him a company car; (4) in April 2013, he again raised his annual salary to $123,500; (5) in April 2013, he hired his other daughter Alexis Langenbach on a part-time basis; and (6) in September 2013, he gave himself a $15,000 bonus. This evidence of his personal profit was directly relevant to the central issue of whether his true motive in terminating Robinson was to personally profit, as was her theory of the case. This evidence was highly probative, and Appellants have failed, with their bare assertions of prejudice, to meet their burden on appeal to prove this evidence more prejudicial than probative. Simply because the evidence supports Robinson's case does not make it prejudicial. Moreover, Appellants had the opportunity explain that the salary increases were reasonable in light of the increased number of hours Langenbach worked and of PJC's increased profitability under Langenbach's leadership, and thus to mitigate any potential prejudice from this evidence. The job of the jury is to weigh conflicting evidence and testimony, and the jury is entitled to believe or disbelieve any portion of conflicting testimony. *See Keveney*, 304 S.W.3d at 105. We see no abuse of discretion here in the trial court's admission of this evidence.

12

Appellants' Point III is denied.

## Appellants' Point VI

In their sixth point on appeal, Appellants argue the trial court erred in entering judgment in favor of Robinson on her claim for shareholder oppression because Robinson failed to plead or prove that equitable relief was necessary to prevent irreparable injury, imminent loss, or a miscarriage of justice. We disagree.

Our standard of review in an action in equity is the same as for any court-tried case: we will affirm the trial court's judgment unless there is no substantial evidence to support the court's decision, it is against the weight of the evidence, or the court erroneously declares or applies the law. *Waters*, 306 S.W.3d at 144-45. Appellants here challenge that the judgment misapplied the law. We review questions of law de novo without deferring to the trial court's conclusions. *Shomaker v. Dir. of Revenue*, 504 S.W.3d 84, 86 (Mo. App. E.D. 2016).

Robinson argued in her Third Amended Petition here that Langenbach and Lanfri, as majority shareholders and directors, acted in an oppressive manner towards Robinson, a minority shareholder, by terminating her employment with PJC, which eliminated and usurped all financial benefit from her shares in PJC, in order to provide financial gain to Langenbach. She requested equitable relief under, as relevant to this appeal, Section 351.494(2)[7] and the trial court's general equitable powers, including for dissolution of PJC or for an order requiring the purchase of her stock shares following an appraisal of their fair value. In her post-trial Proposed Judgment, Robinson suggested the trial court conclude dissolution of PJC was not warranted and instead order Langenbach and Lanfri to purchase Robinson's stock. The trial court concluded that Appellants' termination of Robinson constituted shareholder oppression, took equitable

_____

[7] All statutory references are to RSMo. (cum. supp. 2017), unless otherwise indicated.

13

jurisdiction under Section 351.494, and ordered Langenbach and Lanfri to buy Robinson's stock in PJC for the total price of $59,000, plus interest.

Section 351.494(2) provides that in a proceeding by a shareholder, the trial court may dissolve a corporation if the directors have acted in a manner that is, among other things, oppressive. The burden lies on the shareholder to prove shareholder oppression. *Virgil Kirchoff Revocable Trust Dated 06/19/2009 v. Moto, Inc.*, 482 S.W.3d 834, 840 (Mo. App. E.D. 2016). Appellants here argue the trial court erred in entering judgment in favor of Robinson on her claim of shareholder oppression because she failed to plead or prove that any equitable relief was necessary to prevent irreparable injury, imminent danger of loss, or a miscarriage of justice. Appellants' claim is unavailing.

Although the statute lists liquidation as the remedy, a trial court proceeding under Section 351.494 is not required to dissolve a corporation but may instead grant other, less extreme, forms of equitable relief. *See Struckoff v. Echo Ridge Farm, Inc.*, 833 S.W.2d 463, 466 (Mo. App. E.D. 1992); *Herbik v. Rand*, 732 S.W.2d 732, 234 n.1 (Mo. App. E.D. 1987); *Fix v. Fix Material Co.*, 538 S.W.2d 351, 357 n.3 (Mo. App. 1976) (listing variety of equitable remedies, including order requiring corporation or majority of stockholders to purchase stock of minority stockholder at price determined by court). Of the various equitable remedies available to a trial court in a situation of shareholder oppression, dissolution of the corporation is the most drastic, and before taking this extreme measure, courts should determine whether it is necessary to prevent irreparable injury, imminent danger of loss, or a miscarriage of justice. *See Struckhoff*, 833 S.W.2d at 466.

While Appellants argue that the standard for dissolution articulated in *Struckhoff* applies to any form of equitable relief under Section 351.494, even the most mild, Appellants cited no

14

case law, nor could we find any, supporting this interpretation. Rather, *Struckhoff*, on which Appellants rely, recited this guideline only when discussing the extreme remedy of corporate dissolution, and it did not suggest that a trial court must be so cautious with all equitable remedies. *Id.* We decline to make the standard attached to the most drastic remedy available under Section 351.494 the baseline pleading requirement for all equitable remedies. The trial court did not misapply the law by not requiring Robinson to plead and prove the standard applied to dissolution of corporations in her request for a stock buyout.

Appellants' Point VI is denied.

Appellants' Point VII

In their seventh and final point on appeal, Appellants argue the trial court erred in entering judgment in favor of Robinson on her claim for shareholder oppression because the judgment was against the weight of the evidence. We disagree.

In a challenge to the weight of the evidence supporting a judgment, appellate courts act with caution in considering whether to set aside a judgment on this ground. *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014). A challenge to the weight of the evidence presupposes there is sufficient evidence to support the judgment, and instead argues the persuasiveness of the evidence. *Id.* at 205-06. Typically, this against-the-weight-of-the-evidence standard serves merely as a check upon the trial court's potential abuse of power in weighing evidence, and appellate courts will reverse for this reason only rarely. *Id.* at 206.

When reviewing the record in a challenge to the weight of the evidence, we defer to the trial court on factual issues, as the trial court may believe or disbelieve all, part, or none of the testimony of any witness, even if uncontradicted. *Id.*; *see also Reyner v. Crawford*, 334 S.W.3d 168, 172 (Mo. App. E.D. 2015). We will find a trial court's judgment to be against the weight of

15

the evidence only if the trial court could not reasonably have found from the entire record at trial the existence of a fact that is necessary to sustain the judgment. *Ivie*, 439 S.W.3d at 206. When the evidence poses two reasonable but different conclusions, we defer to the trial court's assessment of the evidence. *Id.*

The parties here largely agree on the basic facts, but they disagree on how to interpret those facts. Each argue their own actions were appropriate and justified, while the actions of the other side were sinister and self-serving. Appellants' burden on appeal to prove the trial court's judgment was against the weight of the evidence is high, and they have not met this burden here.

Specifically, Appellants challenge that no reasonable interpretation of the evidence can prove the necessary fact that Langenbach and Lanfri acted "so far opposed to the true interests of the corporation itself" as to show they must have acted "with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests," citing to *Herbik*, 732 S.W.2d at 234-35. They list the evidence for and against this asserted necessary fact, to then argue the supporting evidence was so lacking in probative value that the trial court could not have reasonably believed Langenbach and Lanfri acted regardless of the consequences to PJC.

Appellants mistake Robinson's burden. Their argument frames the issue as only whether they acted in the best interest of the company, but they do not address their duty as majority shareholders towards minority shareholders. The essence of Appellants argument is that the ends justified the means: PJC is more profitable under Langenbach's leadership, therefore, Langenbach and Lanfri were justified in terminating Robinson. This may well be true, but it is not a complete defense to the charge of shareholder oppression.[8]

---

[8] Appellants did assert an affirmative defense below that their actions were shielded by the business judgment rule, but the trial court denied the affirmative defense, noting that this defense only applies when the directors or officers

16

Shareholder oppression occurs when an action by the majority suggests burdensome, harsh, and wrongful conduct; a lack of honesty and fair dealing in the affairs of the company to the prejudice *of some of its members for the benefit of others*; or a visible departure from the standards of fair dealing and a violation of fair play on which every shareholder is entitled to rely when entrusting his or her money to a company. *Kirchoff*, 482 S.W.3d at 840; *Fix*, 538 S.W.2d at 357-58. Although Appellants argue that *Herbik* provides that the plaintiff must also prove the defendant acted in a manner inconsistent with the interests of the corporation, this is not the standard. Rather, "[a]llegations of oppressive conduct are analyzed in terms of fiduciary duties owned by directors and controlling shareholders *to minority shareholders*." (emphasis added) *Kirchoff*, 482 S.W.3d at 840; *Whale Art Co. v. Docter*, 743 S.W.2d 511, 514 (Mo. App. E.D. 1987); *Fix*, 538 S.W.2d at 357-58.

Here, Langenbach and Lanfri, acting together, control a majority of PJC's stock, and due to this control, the law imposes equitable limitations on their ability to act in their own self-interest at the expense of the minority shareholders. *See Fix*, 538 S.W.2d at 358. Langenbach argues he and Lanfri were acting solely in the interest of PJC, but the evidence lends itself to a reasonable interpretation that Langenbach acted in bad faith to Robinson with the intent, at least in part, to enrich himself personally.

Robinson alleged here that Langenbach and Lanfri, as majority shareholders and directors, acted in an oppressive manner towards Robinson, a minority shareholder, by terminating her employment with PJC, which eliminated and usurped all financial benefit from

---

of a corporation act in good faith, but here, Langenbach and Lanfri had not acted in good faith. Appellants did not appeal from the judgment on this basis, and thus to the extent Appellants argue business-judgment-rule protections on appeal by citing to *Ironite Prods. Co. v. Samuels*, 17 S.W.3d 566 (Mo. App. E.D. 2000), we do not consider this argument. Mo. R. Civ. P. 84.04, 84.13(a).

17

her shares in PJC, in order to provide financial gain to Langenbach. The trial court, based on the evidence presented at the jury trial in February 2017, concluded that Appellants' termination of Robinson constituted shareholder oppression, in that Langenbach and Lanfri used their control of PJC to expel Robinson, cut her off from PJC profits, and put all compensation from PJC into the control of Langenbach, leaving Robinson with unmarketable shares of stock. The trial court noted that Appellants had not attempted to discuss these actions in advance with Robinson, give her any warning, or attempt to negotiate some kind of stock buy-out or other financial accommodation; but rather, Langenbach and Lanfri actively coordinated between themselves and sought to conceal their plans and intentions from Robinson. Appellants agree in their brief that these facts are true, but they argue other evidence was more persuasive.

Our review of the entire record shows the following. The bylaws of PJC allow the Board to remove any officer whenever in the judgment of the Board such removal is in the best interests of the corporation. During the national economic turndown beginning in 2008, PJC lost money, but by 2011, PJC again saw annual net profits. Robinson was the president of PJC until June 20, 2012, and during her tenure, employees, including both Robinson and Langenbach, generally did not work an eight-hour day and the office was not open on Fridays. Further, Robinson did not visit franchisees but limited her job responsibilities to paying bills, payroll, invoicing, taking orders, and making phone calls. After Lanfri visited the PJC headquarters, she expressed concern to Robinson about the lack of professionalism in the office, which Robinson then remedied. The siblings discussed Robinson's potential retirement in 2010, but Robinson did not retire.

From March 2010 to May 2012, Langenbach and Jessica Langenbach took notes of alleged shortcomings of Robinson to build a case for her removal; however, they did not present

18

their concerns to Robinson ahead of her removal or give her the opportunity to make changes. The record included emails between Lanfri and Langenbach, in which Lanfri stated she was thinking of extracting herself from the stock, and Langenbach stated: "if you do give up your [PJC] stock, and I hope you don't, please try to find a way that [Robinson] and I aren't equal. I have been doing this always knowing I have an ace in the hole with you and me having 2/3rds of [PJC]. If [Robinson] and I are equal, I don't have a chance."

Following the Board's removal of Robinson as president and secretary and appointment of Langenbach as president on June 20, 2012, Langenbach worked approximately 60 hours a week and has increased its licensing agreements. As discussed in Point III, shortly after taking over as president, Langenbach increased his salary, Jessica Langenbach's salary, and hired his other daughter Alexis Langenbach.

Again, a judgment is not against the weight of the evidence unless the trial court could not have reasonably found from the record at trial that the existence of a fact is necessary to sustain the judgment. *See Ivie*, 439 S.W.3d at 206. Moreover, the trial court was free to believe or disbelieve any portion of the testimony of any witness. *See Reyner*, 334 S.W.3d at 172. On this record, Appellants fail to establish that the trial court's findings could not have reasonably established burdensome, harsh, and wrongful conduct; a lack of honesty and fair dealing in the affairs of the company to the prejudice of some of its members for the benefit of others; or a visible departure from the standards of fair dealing and a violation of fair play. *Kirchoff*, 482 S.W.3d at 840; *Fix*, 538 S.W.2d at 357-58. To the extent that Appellants request we reweigh the evidence, disregard the trial court's credibility determinations, and supplant the trial court's reasonable conclusions with different, if also reasonable, conclusions, this is not the proper standard in an "against the weight of the evidence" challenge. *See Bowers v. Bowers*, 543

19

S.W.3d 608, 616-17 (Mo. banc 2018). On the evidence here, the trial court's findings and conclusions were reasonable and cannot be said to be against the weight of the evidence.

Appellants' Point VII is denied.

2. *Appeal No. ED106804*

On October 26 and November 1, 2017, the trial court held a bench trial on Robinson's equitable claim for shareholder oppression, requesting Appellants purchase her shares of PJC for fair value, and on Appellants' equitable claim requesting Robinson remove a sign bearing the PJC trademark from the Watson property.

Regarding the valuation of Robinson's shares of PJC stock, Robinson's expert witness, Christopher King ("King"), testified that he used a "fair value" standard to arrive at a total value for PJC of $597,642.00 on June 30, 2017, the date of the most recent financial information. As Robinson had a 33% percent interest of PJC, he calculated the value of her stock shares were $197,222.00. King characterized the fair-value approach as essentially the fair market value excluding any discounts, and, accordingly, he did not apply a minority discount or a marketability discount to Robinson's stock. He agreed he used the income from 2017 in making his calculations, but he normalized the income numbers with expenses from 2012.

By contrast, Appellants' expert witness, Michael Prost ("Prost"), testified that unlike the fair-market-value approach, which considers what a willing buyer would pay in the current general marketplace from a willing seller, the fair-value approach considers the value at the time the oppression occurred. As for discounts, Prost testified that whether to apply discounts for marketability and minority shareholders depends on the unique circumstances of each case. He testified that here, both discounts were appropriate, because the jury had already awarded

20

Robinson damages to compensate her for Langenbach and Lanfri's breach of their fiduciary duty to her, thus recompensing her for the lost value from her shares in PJC. Under a fair-value approach, Robinson had already been compensated for the present and future value of her capital interest. Accordingly, Prost testified that he calculated both the fair market value of PJC in 2017, using both 2017 income and 2017 expenses; and the fair value of PJC in 2012 when the injury occurred, using the financial information from September 2012, which was the information closest to Robinson's June 2012 termination. As relevant to our analysis here, he calculated that the undiscounted "fair value" in 2012 was $233,194.00,[9] which he then reduced by 10%, applying a marketability discount to account for converting this nonmarketable security, and again reduced by 15%, applying a minority discount to account for the lack of voting control. His testimony and exhibits calculated that Robinson's 33% share of the discounted fair value of PJC in 2012 was $59,000, rounded.

Regarding the sign on the Watson property bearing the Perma-Jack trademark, the parties stipulated that PJC owned the Perma-Jack trademark. Robinson testified to the following. The sign bearing the Perma-Jack trademark had been on the Watson property since the early 1980's, and the Watson property had previously been owned by her parents, George and Jane Langenbach, and then by their trust before Robinson's corporation, NANAPA, LLC, purchased the property from the trust on May 8, 2012. While PJC was headquartered at the Watson property, it allowed the Perma-Jack sign to be displayed without any limitations. When NANAPA, LLC purchased the Watson property from the trust in May 2012, Robinson did not know Langenbach and Lanfri planned to move PJC from the Watson property. The parties also stipulated that in September 2012, PJC moved its operation from the Watson property to a

---

[9] He calculated the undiscounted value of Robinson's portion of the 2012 fair value as $77,724.00.

21

different location, and since that time PJC had not performed any business operations at the Watson property. Robinson testified that since her termination in June 2012, she had not used the Perma-Jack trademark in association with business dealings associated with the Watson property, nor had anyone contacted her or NANAPA, LLC to inquire about PJC goods and services. Since acquiring the Watson property, NANAPA, LLC has continued to display the sign, and Robinson testified that she wished to retain the sign bearing the Perma-Jack trademark as a legacy from her mother and father. On cross-examination, she agreed that she did not have a written licensing agreement to use the Perma-Jack trademark on the Watson property.

Last, regarding attorneys' fees, Robinson testified that as of November 1, 2017, she had paid over $100,000 in attorneys' fees in addition to court costs. She requested the trial court award her all or part of those fees. As well, the parties stipulated that as of October 25, 2017, PJC had paid $131,040.37 for the attorneys' fees, expert fees, and other legal expenses for the defense of Langenbach and Lanfri.

In its February 13, 2018, Memorandum, Order and Judgment, the trial court found Prost's testimony regarding the stock valuation to be credible and persuasive, and it agreed the marketability and minority discounts were appropriate because, in part, the jury had already awarded Robinson what in essence was a return on capital for a period of years following her termination. Moreover, the trial court found that the fair-value standard contemplates a valuation immediately before the oppressive conduct. Accordingly, the trial court concluded Robinson's shares of PJC stock had a fair value of $59,000 as of June 2012, when the oppressive conduct occurred. Regarding Appellants' equitable request that Robinson remove the sign bearing the Perma-Jack trademark from the Watson property, the trial court ordered the sign be removed within 30 days after the judgment was final. Last, the trial court denied Robinson's request for

22

attorneys' fees and her request for equitable relief stemming from PJC's indemnification of Langenbach and Lanfri's attorneys' fees. This cross-appeal follows.

Cross-Appeal Points I & II

In the first and second points of her cross-appeal, Robinson argues the trial court erred in determining the fair value of the purchase price of her shares of PJC stock by applying both a marketability discount and a minority discount. We disagree.

We review the trial court's determination of the fair value of stock held by a minority shareholder for whether it is supported by substantial evidence, it is against the weight of the evidence, or if it erroneously declares or applies the law. *King v. F.T.J., Inc.*, 765 S.W.2d 301, 303-04 (Mo. App. W.D. 1988). Recognizing the difficulty in establishing the value for stock of a closely held corporation, we defer to the trial court's ability to weigh the evidence and credibility of witnesses. *Id.* at 304. There is no simple mathematical formula for calculating the fair value of stock, and each case presents different circumstances. *Phelps v. Watson-Stillman Co.*, 293 S.W.2d 429, 433 (Mo. 1956). In determining the fair value of PJC's stock in this shareholder-oppression case, both Robinson and Appellants argue that this Court may look to case law addressing fair value under Section 351.455, and we agree.

Robinson here challenges the trial court's application of both the marketability discount and the minority discount in determining that the fair value of her third of PJC stock was $59,000.00. A marketability discount reflects that there is a limited supply of potential buyers for stock of a closely held company, which devalues the stock. *Swope v. Seigel-Robert, Inc.*, 243 F.3d 486, 493 (8th Cir. 2001). Likewise, a minority discount adjusts for the lack of control over a business entity on the theory that non-controlling shares are worth less than their proportional

23

share of the corporation's value because they lack voting power to control corporate actions. *Id.* at 495.

Robinson relies on *Swope* to argue that these two discounts were not appropriate in determining the "fair value" of her PJC stock. In *Swope*, the United States Court of Appeals for the 8th Circuit, analyzing Missouri law, held that "fair value" was different than "fair market value," noting that the purpose of determining a stock's fair value was an equitable remedy to protect minority shareholders from an action dictated by the majority vote. *Id.* at 491-92 (citing *Dreiseszum v. FLM Indus., Inc.*, 577 S.W.2d 902, 907 (Mo. App. W.D. 1979)). Concluding that while marketability of stock was relevant for determining the "fair market value," application of the marketability discount was not appropriate in determining the "fair value" for the purposes of an equitable remedy for unwilling sellers.[10] *Id.* at 493. Likewise, the *Swope* court concluded that the minority discount was not appropriate in a forced sale because it "undermined the purpose of the fair value appraisal statute by penalizing minority shareholders for their lack of control and encouraged majority shareholders to take advantage of their power." *Id.* at 495.

While the *Swope* decision is well-supported by the law of non-Missouri jurisdictions, it recognized that its holdings were inconsistent with the case law of Missouri intermediate courts. *Id.* at 496. It noted it was only bound to follow a state's highest court or, in the absence of highest authority, the decisions of intermediate courts when they are the best evidence of what the state's law is. *Id.* The *Swope* court then declared it was not bound to follow Missouri intermediate courts on this issue, speculating that when the Missouri Supreme Court did rule on

---

[10] We reject Appellants' argument that Robinson here was a willing seller. While it is true she requested a stock buyout, she only requested this equitable remedy in response to Appellants' shareholder oppression and breach of fiduciary duty to her as a minority shareholder. There is nothing in the record showing that without Appellants' initial bad action, Robinson would have sought to sell her stock in PJC.

the issue of marketability and minority discounts, it would follow the majority of other states and federal jurisdictions in disallowing these discounts in determining fair value. *Id.* at 496-97. The *Swope* court may well be correct in its speculation; however, this intermediate Court is reluctant to likewise speculate that our Supreme Court will overrule existing Missouri law.

Notably, while an underpinning of the *Swope* decision was its declaration that "fair value" was not the equivalent of "fair market value," *id.* at 491-92, the Missouri Supreme Court has conversely held that "the terms 'value,' 'fair value,' 'fair cash value,' and 'fair market value' … have the same general meaning and purposefully if not wisely establish a flexible general standard for fixing value between parties who are either unable or unwilling to voluntarily agree." *Phelps*, 293 S.W.2d at 433. With different conclusions at the base of these jurisdictions' approaches, we cannot, without authority from our Missouri Supreme Court, supplant Missouri case law with federal case law. Moreover, the Missouri Appeals Court for the Western District has interpreted *Phelps* to create a hands-off appellate approach, allowing the trial court wide discretion in determining fair value. *King*, 765 S.W.2d at 305-06 (holding that under Missouri law, application of marketability and minority discounts in determining fair value "rests within the sounds discretion of the trier of fact after every relevant fact and circumstance is considered"). Applying this same hands-off approach here, we will reverse the trial court's determination only if it breached its wide discretion in determining the fair value of Robinson's PJC stock and entered a judgment that was not supported by substantial evidence, was against the weight of the evidence, or erroneously declared or applied the law. *See id.* at 304.

Here, the trial court found persuasive the testimony of Appellants' expert witness, Prost, that the marketability and minority discounts were appropriate in the unique circumstances here where a jury had already awarded Robinson $390,000 for Langenbach and Lanfri's action in

25

removing her from the company in bad faith. Under the circumstances here where Robinson has received a jury award, the concerns addressed in *Swope* are not present. Any penalty Robinson experienced here as a minority shareholder and any advantage the majority shareholders here took of their power, have already been offset by the jury verdict, and thus the reasons for denying the discounts are not applicable here. *See Swope*, 243 F.3d at 495; *cf. 21 West, Inc. v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 868 (Mo. App. E.D. 1995) (recognizing that when damages judgment on other claims in same case have already compensated cross-appellant for diminution of value of company, trial court has discretion to consider overall fairness to parties in determining value of stock in equitable stock buy-out). Under our standard of review and under the current state of Missouri case law on the application of discounts, we cannot conclude under the particular circumstances of this case that the trial court erred in using its discretion to apply the marketability and minority discounts in determining the fair value of Robinson's shares of PJC stock.

Points I and II of Robinson's Cross-Appeal are denied.

### Cross-Appeal Point III

In her third point on cross-appeal, Robinson argued the trial court abused its discretion in using June 20, 2012, as the valuation date for the PJC stock because this date failed to conform to the jury verdict. We disagree.

In applying equitable remedies, the trial court is tasked with "balancing the equities" between the parties, considering the particular facts and circumstances of the case before it. *Southern Star Central Gas Pipeline, Inc. v. Murray*, 190 S.W.3d 423, 432 (Mo. App. S.D. 2006). A trial court has broad discretion to issue and determine the appropriate equitable relief, and we review that exercise of discretion merely for whether an abuse occurred. *Id.*

26

Here, Robinson sought an equitable remedy under Section 351.494, asserting shareholder oppression. Section 351.494 contemplates corporate dissolution, but courts have the discretion to order alternate remedies, such as a stock buy-out. *See, e.g., 21 West*, 913 S.W.2d at 867. Section 351.494 contains no specific valuation date, and this Court has previously found there is no bright-line rule regarding the date a trial court must use for valuing corporations in dissolution actions; but rather, the valuation date is within the discretion of the trial court, depending on the circumstances of the case. *Id.* at 867-68.

Here, the trial court chose to value Robinson's shares of PJC stock as of June 2012, the month in which it found the shareholder oppression occurred. Robinson, citing *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 473 (Mo. banc 2004), argues the trial court's valuation must be consistent with the jury's award, which she interpreted as seeking to compensate her for the loss of all financial benefit from PJC during the period between her bad-faith termination in 2012 and the judgment in 2017. *Leonardi* stated that in cases involving both claims for equitable relief and damages in law, issues of law should be tried by a jury before the trial court resolves the equitable claims, and the trial courts should decide the equitable claims consistently with the factual findings by the jury. *Id.* We disagree that *Leonardi* required the trial court to choose a specific date of valuation to be consistent with the jury verdict; rather, the trial court has wide discretion in determining the fair value of stock. *See King*, 765 S.W.2d at 305-06.

Part of calculating the fair value of a stock is considering the valuation date. Prost testified that the 2012 value of PJC represented the fair value of Robinson's stock, and the trial court found this testimony credible and persuasive. We defer to the trial court's credibility findings. *Id.* at 304. Robinson bears the burden on appeal of proving the trial court abused its discretion, and she cannot meet her burden under the facts here. The trial court determined that

27

the proper valuation date for Robinson's stock in PJC was immediately before the oppressive conduct occurred, and this determination, on its face, is not so against the logic of the circumstances, or so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Williams*, 281 S.W.3d at 872.

This situation before us is similar to the facts in *21 West*: in both cases respondents/cross-appellants received a judgment and award on their various claims involving corporate bad actions against appellants/cross-respondents, but challenged the trial court's valuation of their shareholder interest. *21 West*, 913 S.W.2d at 863. In *21 West*, this Court upheld the trial court's valuation in ordering a stock buyout following a finding of shareholder oppression, holding that because the respondents/cross-appellants had already been "compensated for the diminution in Meadowgreen's value, by means of the judgments in their favor on their [other] actions," the trial court's valuation was a "fair resolution" under the particular facts of that case. *Id.* at 868. As in *21 West*, we conclude that the trial court here did not abuse its discretion under the particular facts of the case in choosing June 2012 as the proper valuation date for Robinson's PJC stock.

Point III of Robinson's Cross-Appeal is denied.

<u>Cross-Appeal Point IV</u>

In Robinson's fourth point on cross-appeal, she argues the trial court erred in failing to equitably award her pre-judgment interest on the purchase price of her PJC stock. We disagree.

Missouri courts award prejudgment interest under two theories: upon authorization from a statute or contract, or in an action in equity as necessary to return a plaintiff to the status quo. *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 508 (Mo. App. W.D. 2010). Robinson

does not assert statutory[11] or contractual authority for prejudgment interest, but she asserts an equitable basis for prejudgment interest. Robinson here sought relief from shareholder oppression, which is an equitable action. *See Kirchoff*, 482 S.W.3d at 839. In equitable actions, whether to award prejudgment interest is left to the discretion of the trial court. *See 21 West*, 913 S.W.2d at 872. We review the trial court's decision to award or not award prejudgment interest in equitable actions for an abuse of that discretion. *Id.* Upon review of the record here, we find no abuse of discretion. Point IV of Robinson's Cross-Appeal is denied.

Cross-Appeal Points V & VI

In Robinson's fifth and sixth points on cross-appeal, she argues the trial court abused its discretion in denying her equitable relief for PJC's indemnification of Appellants' defense costs because the court's findings that the Appellants did not act in good faith barred indemnification under Section 351.355.1, and in denying her request for attorneys' fees. We disagree with both arguments.

Here, the parties stipulated that as of October 25, 2017, PJC had paid $131,040.37 for the attorneys' fees, costs, expert fees, and other legal expenses in this case for the defense of Langenbach and Lanfri, who are directors of the board, but that PJC had not paid any sum for the legal expenses for Robinson related to this case. Following the bench trial on her equitable claim for shareholder oppression, Robinson proposed that because she believed PJC's indemnification of Langenbach's and Lanfri's legal expenses was improper under Section 351.355.1,[12] the trial

---

[11] While Robinson cites to Section 408.020, she does not assert this statute entitles her to prejudgment interest.

[12] In her Reply Brief, Robinson clarifies she is not challenging PJC's indemnification of legal expenses, agreeing that she did not bring a derivative action for improper indemnification below. Thus, to the extent Robinson makes arguments for the first time on appeal regarding the application of Section 351.355, we do not address her claims of "improper" indemnification.

court should award Robinson a portion of her attorneys' fees as an equitable measure to balance benefits between the parties. The trial court declined to do so. Robinson now challenges this decision as an abuse of the trial court's discretion to fashion equitable remedies.

As noted previously, we review a trial court's broad discretion to issue and determine the appropriate equitable relief merely for an abuse of that discretion. *Southern Star*, 190 S.W.3d at 432. Moreover, the trial court is vested with broad discretion in awarding attorneys' fees, and we will reverse the trial court's decision granting or denying fees only upon finding an abuse of discretion. *Ruzicka v. Hart Printing Co.*, 21 S.W.3d 67, 73 (Mo. App. E.D. 2000). Missouri follows the "American rule," which provides that, absent statutory authorization or contractual agreement, with few exceptions, each litigant bears the burden of his or her attorneys' fees. *City of Cottleville v. St. Charles Co.*, 91 S.W.3d 148, 150 (Mo. App. E.D. 2002). While a trial court may award attorneys' fees in occasional circumstances as necessary in equity to balance benefits, such equitable remedies are at the discretion of the trial court, and we will not disturb that exercise of discretion absent an abuse of discretion.

Robinson argues that Appellants' action in having PJC pay for their defense is a further example of "oppressive conduct" against her specifically, with Langenbach and Lanfri again using PJC resources for their benefit to her detriment. She then argued she was entitled to an additional equitable remedy in the form of attorneys' fees for this further oppressive conduct. The trial court disagreed and denied her request for attorneys' fees on an equitable basis to compensate her for PJC's indemnification of Langenbach and Lanfri's attorneys' fees. We see no abuse of discretion here in the trial court's decision to deny additional equitable remedies to Robinson in the form of attorneys' fees. The Appellants' lack of good faith, breach of fiduciary duty, and shareholder oppression have been accounted for in the jury's award and in the trial

30

court's judgment ordering a stock buyout, and the trial court's decision here not to order an additional equitable remedy is neither so against the logic of the circumstances, nor so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *See Williams*, 281 S.W.3d at 872.

Points V and VI of Robinson's Cross-Appeal are denied.

<u>Cross-Appeal Point VII</u>

In her seventh and final point on cross-appeal, Robinson argues the trial court erred in granting Appellants injunctive relief by ordering Robinson remove signage bearing the Perma-Jack trademark because there was no substantial evidence that she was using the trademark in connection with goods or services offered for sale or that the sign was likely to cause confusion of an appreciable number of ordinarily prudent purchasers as to the source of the goods or services in question. We disagree.

While cited to by neither party, nor recognized by the trial court, Section 417.061 is controlling here. Section 417.061.1 provides for injunctive relief based on the "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark … notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Section 417.061.1. Further, a trial court has the discretion to grant injunctive relief to restrain the use of a trademark, when it deems such relief to be just and reasonable. Section 417.061.2. We review the trial court's exercise of its broad discretion in granting equitable relief merely for an abuse of that discretion. *Coyle v. City of St. Louis*, 408 S.W.3d 281, 291 (Mo. App. E.D. 2013).

The plain language of this statute provides that a plaintiff "need not show either competition between itself and [defendants] or any customer confusion." *Cushman v. Mutton*

31

*Hollow Land Dev., Inc.*, 782 S.W.2d 150, 160 (Mo. App. S.D. 1990) (citation omitted). Rather, the trial court may grant injunctive relief, in its discretion, where there is a likelihood of injury to business reputation or of dilution of the trademark. Here, the parties stipulate that PJC owned the Perma-Jack trademark, that PJC moved its operations from the Watson property in September 2012, but that NANAPA, LLC has continued to display a sign bearing the Perma-Jack trademark on the Watson property even after PJC relocated its operations away from the property. Although Robinson testified, in essence, that she was not competing with PJC nor was there confusion in the community to the source of PJC's goods and services, her testimony did not prevent the trial court from ordering an equitable remedy under Section 417.061. *See id.* On the facts here, we do not see an abuse of discretion in the trial court's order granting injunctive relief to Appellants on their claim for trademark infringement by requiring Robinson to remove the sign.

Point VII of Robinson's Cross-Appeal is denied.

## Conclusion

The judgments of the trial court are affirmed.

_____
Robin Ransom, J.

Sherri B.Sullivan, P.J., and
James M. Dowd, J., concur.

32