

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| PHILLIP WEEKS, | ) | No. ED111496 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 19SL-CC05244 |
| | ) | |
| ST. LOUIS COUNTY, MO., CITY OF | ) | Honorable Thomas C. Albus |
| WEBSTER GROVES, MO., | ) | |
| | ) | |
| Defendants/Respondents, | ) | |
| | ) | |
| CITY OF UNIVERSITY CITY, MO., AND | ) | |
| REGIONAL JUSTICE INFORMATION | ) | |
| SERVICES COMMISSION (REJIS), | ) | |
| | ) | |
| Defendants. | ) | Filed: November 14, 2023 |

Before Lisa P. Page, PJ., Gary M. Gaertner, Jr., J., and Angela T. Quigless, J.

Phillip Weeks (Weeks) appeals from the trial court's grant of summary judgment in favor of the City of Webster Groves (Webster Groves) and St. Louis County. We reverse and remand in part and affirm in part.

## Background

Pursuant to Missouri's Sunshine Law, Section 610.010 *et seq.* (Sunshine Law), Weeks sought information relating to vehicle stops made by several police departments. Relevant to this appeal, he requested "[f]iles of the databases containing data generated from vehicle stop

forms for 2014 through and including 2018, including officer PINs/DSNs,[1] that are *kept pursuant to Mo. Rev. Stat. Section 590.650*" from St. Louis County. (emphasis added). Weeks similarly sought records from Webster Groves "pertaining to the Missouri Revised Statute 590, Section 590.650" for years 2011 to 2016, and specifically referenced "any annual compilations of data generated by the Webster Groves Police Department or received from the Attorney General . . . ." This request did not include DSNs. Weeks initially submitted his request to the Webster Groves records custodian and was referred to the Regional Justice Information Services Commission (REJIS). This quasi-governmental body, governed as a joint commission pursuant to Missouri statutes and ordinances of local governmental entities within the state, provides information technology services to municipalities and governmental bodies, including Webster Groves. The vehicle stop information sought by Weeks is stored on REJIS's database at its office in the City of St. Louis.

Weeks emailed the chief of operations for REJIS and the records custodian for Webster Groves requesting the vehicle stop information. In this request, Weeks did specifically ask for "the DSN/PIN" of the officer making the stop. REJIS replied, explaining it does not retain any historical vehicle stop data and would have to create a program to produce or reproduce the information requested. REJIS informed Weeks that it retains related data for two years plus the current year; its information technology division could recreate the reports for 2016, 2017, and partially for 2018; and it would take approximately four hours at a cost of $352. Weeks agreed to pay the estimated cost.

When REJIS sought authorization from Webster Groves, the chief of police replied that "the Sunshine Law does not mandate the creation and generation of custom reports upon request.

_____

[1] In his point three on appeal, Weeks refers to this identifying information as the Officer's "assigned DSN (Department Service Number)." For purposes of this appeal, we refer to the Department Service Number as "DSN."

Consequently, we do **not** authorize this work." (emphasis in original). Webster Groves sent Weeks a written response, informing him no records responsive to his request existed and Webster Groves was not obligated to create a new record, but only to provide existing ones.

In November 2019, Weeks filed an action against St. Louis County, Webster Groves, University City, and REJIS[2] pursuant to the Sunshine Law, for the refusal to produce certain information in response to his requests. St. Louis County initially provided vehicle stop records but redacted the officer DSNs pursuant to the court's January 3, 2020 order of protection. Webster Groves declined to provide any records. Thereafter, the trial court granted summary judgment in favor of Webster Groves and St. Louis County. Weeks appeals.

## Discussion

Weeks asserts three points on appeal. In point one, Weeks argues summary judgment in favor of Webster Groves was error because REJIS maintained vehicle stop information electronically for Webster Groves which consists of public records under the Sunshine Law. In point two, Weeks asserts summary judgment was improper because Webster Groves maintained control over the vehicle stop records via its own custodian of records and its agreement with REJIS to retain control over production of its records. In point three on appeal, Weeks contends the trial court erred granting summary judgment in favor of St. Louis County because an officer's DSN is not exempt from production under the Sunshine Law.

### Standard of Review

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) The trial court makes its decision regarding summary judgment based

---

[2] The trial court granted summary judgment in favor of REJIS but Weeks dismissed REJIS from this appeal. Weeks voluntarily dismissed his claim against University City because it produced the requested vehicle stop records.

3

on the pleadings, the record submitted, and the law. *Id.* Our review of whether summary judgment was proper is *de novo* and based on the same criteria. *Id.* As the moving parties, Webster Groves and St. Louis County have the burden to establish a right to judgment as a matter of law based on the record submitted. *Robinson v. Lagenbach*, 439 S.W.3d 853, 856 (Mo. App. E.D. 2014).

<u>*Analysis*</u>

The Sunshine Law was enacted to allow public access to governmental records and meetings. *Jones v. Jackson Cnty. Circuit Court*, 162 S.W.3d 53, 59 (Mo. App. W.D. 2005). Section 610.010(6) defines "public record" in relevant part as "any report, survey, memorandum, or other document or study prepared for the public governmental body by a consultant or other professional service paid for in whole or in part by public funds, including records created or maintained by private contractors under an agreement with a public governmental body or on behalf of a public governmental body . . . ." Any document or study "prepared for a public governmental body by a consultant or other professional service as described in this subdivision shall be retained by the public governmental body in the same manner as any other public record[.]" Section 610.010(6). Public records are open to the public unless a statute protects their disclosure or they are subject to a permissible exemption enumerated in Section 610.021. *State ex rel. Goodman v. St. Louis Bd. of Police Comm'rs*, 181 S.W.3d 156, 159 (Mo. App. E.D. 2005).

Weeks' request for records under the Sunshine Law was specific to records "*kept pursuant to Mo. Rev. Stat. Section 590.650*." (emphasis added). Pursuant to Section 590.650.3, each law enforcement agency is required to compile certain data for the calendar year into a

4

report for the Missouri Attorney General (Attorney General). Section 590.650.2 mandates that each time an officer conducts a motor vehicle stop, the following information be reported:

(1) The age, gender and race or minority group of the individual stopped;
(2) The reasons for the stop;
(3) Whether a search was conducted as a result of the stop;
(4) If a search was conducted, whether the individual consented to the search, the probable cause for the search, whether the person was searched, whether the person's property was searched, and the duration of the search;
(5) Whether any contraband was discovered in the course of the search and the type of any contraband discovered;
(6) Whether any warning or citation was issued as result of the stop;
(7) If a warning or citation was issued, the violation charged or warning provided;
(8) Whether an arrest was made as a result of either the stop or the search;
(9) If an arrest was made, the crime charged; and
(10)  The location of the stop.

A DSN is not required in this or any other provision of Section 590.650.

## St. Louis County

Weeks requested vehicle stop information from St. Louis County "*kept pursuant to Mo. Rev. Stat. Section 590.650.*" (emphasis added). By his own request, Weeks is limited to obtaining only the information generated and required for compliance with Section 590.650. St. Louis County provided him with this information, and as a result was properly entitled to summary judgment. Therefore, the trial court did not err in granting summary judgment in favor of St. Louis County.

## Webster Groves

Weeks contends the trial court erred in granting summary judgment in favor of Webster Groves because REJIS maintains vehicle stop information electronically for Webster Groves which consists of public records under the Sunshine Law and because Webster Groves maintained control over the vehicle stop records via its own custodian of records and its agreement with REJIS to retain control over production of its records.

5

Webster Groves argues it discarded the monthly reports provided by REJIS once they were reviewed, which would require REJIS, on behalf of Webster Groves, to create a record not presently in existence. Webster Groves claims this is not required by the Sunshine Law, and therefore, Weeks failed to establish a necessary element of his claim. However, Section 610.010(6) mandates that any document or study prepared for a public governmental body by a professional service, such as REJIS, shall be retained by the public governmental body. Thus, recreating reports previously prepared but destroyed by that public governmental body is distinguishable from creating a wholly new, custom report not typically prepared.

Here, based on the summary judgment record, it is undisputed that pursuant to Section 590.650.2, records of vehicle stops made by Webster Groves police officers were created, provided to Webster Groves, and then discarded. Moreover, at oral argument, Webster Groves conceded Weeks is entitled to the records provided to the Attorney General pursuant to Section 590.650.3.

The trial court erred in granting summary judgment in favor of Webster Groves. Under our *de novo* review, we do not defer to the trial court's decision and apply the same criteria as the trial court in its initial determination, which is based upon the record submitted and the law. *State ex rel. Nixon v. Boone*, 927 S.W.2d 892, 895 (Mo. App. W.D. 1996). Pursuant to Rule 84.14, we are authorized to give such judgment as the trial court should have entered, particularly where there is no dispute as to the facts. *See Hilton v. Davita, Inc.*, 302 S.W.3d 157, 159-160 (Mo. App. E.D. 2009). Thus, based upon the record before us and as a matter of law, pursuant to the Sunshine Law, Webster Groves is required to provide vehicle stop records generated for purposes of complying with Section 590.650.

**Additional Request for Department Service Numbers**

Weeks also requested "data generated" from vehicle stop forms kept pursuant to Section 590.650, including the DSN of the officer making each stop. As previously discussed, Section 590.650.2 simply requires that each time an officer conducts a motor vehicle stop, the officer "shall report the following information to the law enforcement agency that employs the officer. . . ." As previously noted, the DSN of the officer conducting the stop is not included in the "exhaustive" list of information required to be reported under Section 590.650.2. *See State ex rel. Goodman*, 181 S.W.3d at 160.

In *State ex rel. Goodman*, our court considered an analogous request by a chiropractor for disclosure of statutorily required information contained in incident reports pursuant to the Sunshine Law. 181 S.W.3d at 156. That statute required incident reports to contain certain information, including the date, time, location, name of victim, and facts and circumstances regarding an incident. *Id*. at 159; Section 610.100.1(4). Goodman specifically requested the City of St. Louis police department to disclose incident reports from certain dates under the Sunshine Law. *Id*. at 158. The police department produced the requested incident reports but redacted additional information contained in them, including the license plate numbers, addresses, telephone numbers, and month and date of birth (not year) of the parties to the incidents. *Id*. Goodman sought a writ of mandamus enjoining the police department from redacting the information "in violation of the [Sunshine Law]." *Id*. The trial court dismissed Goodman's petition for writ of mandamus and Goodman appealed. *Id*.

The issue on appeal was whether the statutory Sunshine Law provisions protected disclosure of information redacted by the police department from the incident reports. *Id*. at 159. Our court held that pursuant to statute, the incident report consisting of only information

specifically delineated as required by Section 610.100.1(4) is considered an open record under the Sunshine Law. *Id*. The information redacted from the incident reports was not included in the "exhaustive" list of information to be contained in the incident reports. *Id*. at 160. Thus, the court did not err in allowing the police department to redact the information from the incident reports Goodman requested. *Id*.

Moreover, nothing in the definition of "public records" indicates that "it includes written or electronic records that *can* be created by the public governmental body, even if the new record could be created from information culled from existing records." *Jones*, 162 S.W.3d at 60 (emphasis in original). The plain language of the Sunshine Law only requires access to existing records and does not mandate a public governmental body to generate a new record or report from raw data available which is not typically generated by the public governmental body. *Id*. As a result, neither Webster Groves nor St. Louis County are required to generate any report pursuant to Section 590.650 that includes a DSN simply because the information exists. This is the exact circumstance prohibited by the holding in *Jones*.

Here, the express and limited request is for records kept in order to comply with Section 590.650, which makes no mention of a DSN. Therefore, it is not necessary to decide whether a DSN used to compile that report is a public record subject to Missouri's Sunshine Laws. Since we do not find the DSN is a public record in these circumstances, we do not reach the issue of whether it is subject to a permissible exemption from disclosure under Section 610.021.

**Conclusion**

The trial court erred in granting summary judgment in favor of Webster Groves. Weeks is entitled to and Webster Groves is required to provide the records generated to comply with Section 590.650 pursuant to his Sunshine Law request. The judgment is reversed and remanded

for further proceedings consistent with this opinion.  However, summary judgment in favor of St.

Louis County was proper, and the judgment in that respect is affirmed.

_____
Lisa P. Page, Presiding Judge

Gary M. Gaertner, Judge concurs and
Angela T. Quigless, Judge dissents in a separate opinion



# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

PHILLIP WEEKS,                                    )
                                                  )
      Plaintiff/Appellant,               )       No. ED111496
                                                  )
vs.                                               )
                                                  )
ST. LOUIS COUNTY, MO., and                        )       Appeal from the Circuit Court
CITY OF WEBSTER GROVES, MO.,                       )       of St. Louis County
                                                  )       19SL-CC05244
      Defendants/Respondents,            )
                                                  )
and                                               )       Honorable Thomas C. Albus
                                                  )
CITY OF UNIVERSITY CITY, MO.,                      )
and                                               )
REGIONAL JUSTICE INFORMATION                       )       Filed:  November 14, 2023
SERVICES COMMISSION (REJIS),                       )
                                                  )
      Defendants.                        )

## DISSENT

I respectfully dissent. This case was before the trial court on motions for summary judgment based on Weeks's records requests pursuant to Missouri's Sunshine Law, section 610.010 et seq. RSMo. (2016). Summary judgment requires this Court to review based on the record below.

The trial court properly enters summary judgment when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020); *Purk v. Farmers Ins. Co., Inc.*, 628

S.W.3d 714, 719 (Mo. App. E.D. 202). Our review is confined to the summary judgment record. *Almat Builders & Remodeling, Inc. v. Midwest Lodging, LLC*, 615 S.W.3d 70, 76 (Mo. App. E.D. 2020). We review the record in the light most favorable to the party against whom judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. *Green*, 606 S.W.3d at 116.

The axiom that we view the record "in the light most favorable to the non-movant," here Weeks, means that the movants—the defendants Webster Groves and St. Louis County—have the burden to establish a right to judgment as a matter of law based on the record as submitted. *Robinson v. Lagenbach*, 439 S.W.3d 853, 856 (Mo. App. E.D. 2014). If the movant requires an inference to establish the right to judgment as a matter of law, and the evidence reasonably supports any inference other than, or in addition to, the movant's inference, a genuine dispute exists, and the movant's *prima facie* showing fails. *Id.*

While I agree with the majority that Webster Groves must provide the records Weeks requested, I disagree with the majority's conclusion that Webster Groves is not required to include officer DSNs in those records. I further dissent as to St. Louis County. The majority concludes that neither Webster Groves nor St. Louis County is required to disclose officer DSNs because "the express and limited request is for records kept in order to comply with Section 590.650, which makes no mention of a DSN." The uncontroverted material facts in the record before us do not support this conclusion.

As to Webster Groves, I would reverse the grant of summary judgment in favor of Webster Groves, and render judgment pursuant to Rule 84.14 that Webster Groves provide Weeks with the Vehicle Stop records, including officer DSNs, for the years that Webster Groves

2

acknowledged in oral argument are currently available.[1] As to St. Louis County, I would reverse and remand for further proceedings. As the case proceeds, St. Louis County may be able to develop the record to establish that DSNs are subject to a permissive exemption under section 610.021(3) or (13) RSMo. (2016 & Supp. 2022).

I disagree with the majority opinion in several respects. It conflates Weeks's distinct Sunshine Law requests to Webster Groves and St. Louis County, ignores essential facts with regard to the records of each defendant that include officer DSNs, reads subsection 2 of section 590.650 in isolation, and uses section 590.650.2 to override the provisions of the Sunshine Law.

For the sake of clarity, I would add the following uncontroverted facts to the discussion. Missouri law requires that whenever a peace officer stops a motor vehicle, the officer shall report to his or her employer certain details about the stop and demographic information about the individual stopped. As REJIS explained in its interrogatory answers, "[t]he Traffic Analysis system will display all stops (whether or not a ticket was issued) entered into the system for each officer based on his or her DSN."

Law enforcement agencies are required each year to compile the data collected on all vehicle traffic stops and submit a report to the Missouri attorney general pursuant to section 590.650. Webster Groves, St. Louis County, and numerous other law enforcement agencies throughout Missouri contract with REJIS to help them collect, retain, and compile the data required for these annual reports. Law enforcement agencies may receive periodic reports from REJIS throughout the year containing this data for purposes of internal monitoring, and agencies may also extract their own data as desired for review.

---

[1] At oral argument, Webster Groves conceded that REJIS has vehicle stop data for 2020, 2021, 2022, and possibly 2019, with officer DSNs that are subject to disclosure under the Sunshine Law.

On November 2, 2018, Weeks emailed the chief of operations for REJIS and the records custodian for Webster Groves with the following request:

> I am hereby requesting the annual "raw" data files from the Vehicle Stop Forms with all columns including the DSN/PIN, that REJIS uses to compile the stats for the annual Vehicle Stop Reports for the Webster Groves Police Department for the years 2014-2017, and the monthly data for 2018.

In July 2019, Weeks submitted a Sunshine Law request to REJIS seeking St. Louis County Police Department Records:

> Files of the databases containing data generated from vehicle stop forms for 2014 through and including 2018, including officer PINs/DSNs, that are kept pursuant to Mo. Rev. Stat. § 590.650. Upon information and belief, these databases are generated from information transmitted to REJIS by Saint Louis County Police Officers during or after each vehicle stop.

Weeks made distinct requests on different dates for Webster Groves and St. Louis County records. The wording of the two requests was different, and the issues argued by each defendant in the trial court on summary judgment and to this Court are different. Webster Groves argued that the records Weeks requested did not exist, and that the City was not obligated to create new records. Webster Groves never argued any issue specific to DSNs. Indeed, at oral argument, Webster Groves began by stating that DSNs were never an issue because Webster Groves had no records whatsoever to disclose. St. Louis County, on the other hand, argued that officer DSNs, although contained in the records the County originally provided to Weeks, were subject to permissive exemption pursuant to section 610.021. Therefore, this Court should take care to clearly identify the records request being discussed and to avoid conflating either the Sunshine Law requests or the issues presented.

With regard to Webster Groves, the summary judgment record before us establishes that records of vehicle stops made by Webster Groves police officers were previously created by REJIS, provided to Webster Groves on a regular basis, and then discarded by Webster Groves

4

after review. I agree with the majority opinion that recreating or reproducing the records REJIS typically generated and compiled and provided to Webster Groves in the usual course of business does not amount to "obligat[ing] Webster Groves to direct REJIS, on its behalf, to create a new public record."

However, the records provided to Webster Groves by REJIS for periodic review included officer DSNs. Webster Groves asserted in its statement of uncontroverted material facts that:

> 9. REJIS collects and compiles the electronic data received from Webster Groves in order for Webster Groves to submit an annual report to the Missouri Attorney General pursuant to §590.650.3 RSMo. …
> 10. REJIS sends a monthly electronic report to Webster Groves of that month's electronic data submitted for monitoring purposes, however prior to 2020, Webster Groves did not retain this monthly electronic report and would discard after a Webster Groves field officer reviewed the data. …
>
> ***
>
> 21. A stopping officer's **DSN** is transmitted to REJIS's servers when officers input information required for the vehicle stop report pursuant to §590.650.3 RSMo. …

(Emphasis added). These facts are uncontroverted. At oral argument, Webster Groves confirmed that when reporting a vehicle stop, the officer enters his or her DSN into the portal to access REJIS's "electronic recordkeeping system." Webster Groves further confirmed that the monthly electronic reports its police department received from REJIS for monitoring purposes show the officer DSNs.

Webster Groves acknowledged that it has vehicle stop data for 2020, 2021, 2022, and possibly 2019, and that the monthly reports it receives from REJIS "are associated with the DSNs." Most importantly, upon questioning by my colleagues at oral argument, Webster Groves acknowledged that it now maintains existing records; that if Weeks made the same request today for vehicle stop information with officer DSNs entered into REJIS for 2020 going forward, he could obtain that information; and that if the DSN appears in the information Webster Groves receives from REJIS, "it [the DSN] would be in the record."

5

With regard to St. Louis County, it provided the records, including DSNs, that Weeks requested once he filed suit, but later the County redacted the DSNs from those records after obtaining a protective order from the trial court. On appeal, St. Louis County acknowledges that DSNs are embedded in its files of traffic stops provided to Weeks and later redacted.

Citing *Jones v. Jackson Cnty. Circuit Court*, 162 S.W.3d 53, 59 (Mo. App. W.D. 2005), the majority states that "neither Webster Groves nor St. Louis County are required to generate any report pursuant to Section 590.650 that includes a DSN simply because the information exists. This is the exact circumstance prohibited by the holding in *Jones*." We agree with the proposition stated in *Jones* that "the Sunshine Law does not obligate a public governmental body to generate a *new* record or report derived from raw data available to that public governmental body *which is not typically generated by the public government body*." (Emphases added). *Jones* is clearly distinguishable, however.

In that case, the plaintiff asked the circuit court to provide him with information on a CD-ROM concerning petitions filed for rent and possession, unlawful detainer, and damages for breach of lease or rental agreements. *Jones*, 162 S.W.3d at 56. The plaintiff sought records containing information about these types of cases, namely the case filing date; the case style; the names and addresses of the parties; the assigned court; the case number; the party against whom judgment was entered; the date of judgment; the amount of judgment; the date judgment was satisfied; disposition of the petition; and the case type. *Id*. The court administrator denied the plaintiff's request because court operating rules "require[] that public court records be made available only by inquiry of a single case or by accessing any public index." *Id*. The circuit court in *Jones* did not, in the usual course of business, typically create and keep records in the format and nature the plaintiff requested. The plaintiff in *Jones* wanted the court to use publicly

6

available information from individual cases to research, compile, and prepare for him an entirely new custom record setting out the details of the desired information, which the court did not typically compile.

The Western District observed that the circuit court provided the plaintiff with access to its existing records under the Sunshine Law, but that nothing in the Sunshine Law's definition of "public records," indicates it includes records that could be created by the public governmental body, even if the new record could be created from information culled from existing records. *Id*. at 60. The Court held the circuit court did not violate the Sunshine Law by denying the plaintiff's request to create a new, customized record from information contained in the court's existing records. *Id*. But this is not our case.

In *Jones*, the plaintiff requested compilation of select information gleaned from multiple records and then preparation of a new type of record not typically generated. Here, Weeks did not request that the vehicle stop data be combed and certain information disaggregated and compiled into a new customized record for specific categories of stops, such as those made for particular reasons, in a certain part of town, during a certain time of day, or with a particular outcome. Rather, Weeks requested "the annual 'raw' data files from the Vehicle Stop Forms with all columns including the DSN/PIN, that REJIS *uses to compile* the stats for the annual Vehicle Stop Reports for the Webster Groves Police Department." (Emphasis added). REJIS had already generated in electronic form the requested records for Webster Groves on a monthly and annual basis by compiling data currently retained in REJIS's database for this purpose. REJIS conveyed the monthly and annual electronic records to Webster Groves without retaining a copy of the record as compiled. However, the data remained in REJIS's database until Webster Groves finalized and sent its annual report to the attorney general's office. For its part, Webster Groves

7

discarded and did not retain the electronic monthly records REJIS conveyed to it. As to St. Louis County, the County acknowledges on appeal that DSNs are embedded in its files of traffic stops previously provided to Weeks and later redacted pursuant to protective order.

The uncontroverted facts in the record before us establish that officer DSNs are included in the records already prepared in the usual course of business by or for each defendant. Given the uncontroverted material facts in this case, I disagree with the majority's invocation of the holding in *Jones*.

This brings us to the gravamen of the majority's decision. The majority maintains that "Weeks requested vehicle stop information from St. Louis County '*kept pursuant to Mo. Rev. Stat. Section 590.650.*' (emphasis added). By his own request, Weeks is limited to obtaining only the information generated and required for compliance with Section 590.650." I disagree with the majority's interpretation of the phrase "kept pursuant to Mo. Rev. Stat. Section 590.650" because it reads subsection 2 of section 590.650 in isolation.

As the majority opinion sets forth, Missouri law provides that whenever a peace officer stops a motor vehicle, the officer shall report enumerated information about the stop and demographic of the person stopped. Section 590.650.2. Each law enforcement agency shall then compile the data described above for the calendar year into a report to the attorney general. Section 590.650.3(1). The majority's interpretation, however, ignores subsection 5 of section 590.650, which mandates additional responsibilities and requires law enforcement agencies to keep information about officers' vehicle stops beyond the "exhaustive" information enumerated in section 590.650.2.

Each law enforcement agency shall adopt a policy on race-based traffic stops that:

8

(1) Prohibits the practice of routinely stopping members of minority groups for violations of vehicle laws as a pretext for investigating other violations of criminal law;

(2) *Provides for periodic reviews by the law enforcement agency* of the annual report of the attorney general required by subsection 4 of this section that:

    (a) *Determine whether any peace officers of the law enforcement agency* have a pattern of stopping members of minority groups for violations of vehicle laws in a number disproportionate to the population of minority groups residing or traveling within the jurisdiction of the law enforcement agency; and

    (b) *If the review reveals a pattern, require an investigation to determine whether any peace officers of the law enforcement agency* routinely stop members of minority groups for violations of vehicle laws as a pretext for investigating other violations of criminal law; and

(3) Provides for appropriate counseling and training of *any peace officer found* to have engaged in race-based traffic stops within ninety days of the review

Section 590.650.5 (Emphases added).

Thus, under subsection 5, a law enforcement agency must conduct periodic reviews to determine whether there exists a pattern of stopping members of minority groups disproportionate to the population of minority groups living or traveling within the agency's jurisdiction. Section 590.650.5(2)(a). If a periodic review reveals such a pattern, then the agency shall investigate, and shall provide appropriate counseling and training for any peace officer found to have engaged in race-based traffic stops. Section 590.650.5(2)-(3). I fail to see how a law enforcement agency could comply with section 590.650.5 if the agency cannot internally identify in some manner, via a DSN or other identifier, which traffic stops were made by which officers. St. Louis County acknowledges that DSNs are embedded in its files of traffic stops previously provided to Weeks and then redacted.

We review the record in the light most favorable to the party against whom judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. *Green*, 606 S.W.3d at 116. Thus, the inference is that the County "kept pursuant to Mo. Rev. Stat. § 590.650" traffic stop files that included DSNs. The majority likewise relies on section

9

590.650.2 with regard to Webster Groves, but Webster Groves acknowledged that it has vehicle stop data for 2020, 2021, 2022, and possibly 2019, and that the monthly reports it receives from REJIS "are associated with the DSNs."

Finally, section 590.650 does not control what comprises a public record, and does not determine whether information is subject to disclosure under the Sunshine Law. A "public record" is any written or electronic record retained by or of any public governmental body. Section 610.010(6); *Petruska v. City of Kinloch*, 559 S.W.3d 386, 388 (Mo. App. E.D. 2018). "[A]ll records of public governmental bodies are presumed to be open records, and the exceptions are to be strictly construed to promote that policy." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 414 (Mo. banc 2001). Section 610.022.5 states "[p]ublic records shall be presumed to be open unless otherwise exempt pursuant to the provisions of *this chapter*." (Emphasis added). "This chapter" as used in section 610.022.5 plainly means Chapter 610, the Sunshine Law.

Given the express public policy statement of the Sunshine Law in favor of open records, this policy should prevail over a statute outside Chapter 610, which neither relates to public records nor contains an express prohibition on disclosure of certain information. *See Laut v. City of Arnold*, 417 S.W.3d 315, 322 (Mo. App. E.D. 2013) (stating the express public policy statement of the Sunshine Law in favor of open records "should be used as a tiebreaker in favor of disclosure when records fit equally well under two specific but opposite provisions of the Sunshine Law.") (quoting *Guyer*, 38 S.W.3d at 414).[2]

---

[2] In *Guyer*, our Supreme Court concluded that the requirement in section 610.100.2 to open investigative reports once the investigation becomes inactive overrides the permissive exemption from disclosure for personnel records in section 610.021. 38 S.W.3d at 414.

The majority cites *State ex rel. Goodman v. St. Louis Bd. of Police Comm'rs*, 181 S.W.3d 156, 159 (Mo. App. E.D. 2005), for the proposition that the DSN of the officer conducting the stop is not included in the "exhaustive" list of information required to be reported under Section 590.650.2. *Goodman*, however, relied on another provision of the Sunshine Law, namely section 610.100.1(4), to determine that the police department could redact information outside those elements expressly included in the Sunshine Law's definition of "incident report." *Id*. at 159-60. Here, in contrast, the majority seeks to rely on a statute outside the Sunshine Law (outside chapter 610) to determine that said statute, section 590.650, protects DSNs from disclosure under the Sunshine Law, even though section 590.650 contains no such provision. It bears repeating: "Public records shall be presumed to be open unless otherwise exempt pursuant to the provisions of *this chapter*." Section 610.022.5 (emphasis added). "[A]ll records of public governmental bodies are presumed to be open records, and the exceptions are to be strictly construed to promote that policy." *Guyer*, 38 S.W.3d at 414.

In addition, as to St. Louis County, because I disagree with the majority's conclusion based on the wording of Weeks's request to the County, I now address the issue presented by the County on summary judgment. St. Louis County did not raise the same issue or argument as Webster Groves on the summary judgment record. Weeks requested of the County "[f]iles of the databases containing data generated from vehicle stop forms for 2014 through and including 2018, including officer PINs/DSNs, that are kept pursuant to Mo. Rev. Stat. § 590.650." Once Weeks filed suit, St. Louis County provided records with DSNs. Later St. Louis County obtained a protective order from the trial court allowing redaction of the DSNs from the records provided to Weeks.

11

St. Louis County maintains that DSNs in the context of its vehicle stop files relate and pertain to officer job performance and individually identifiable personnel records. Thus, DSNs are subject to permissive exemption from disclosure under the Sunshine Law, sections 610.021(3) and (13) RSMo. (2016 & Supp. 2022). The County argues that it uses the files as originally provided to Weeks, with officer DSNs, to monitor the performance of its officers and their compliance with the County's policy on race-based traffic stops, which is required by section 590.650.5. St. Louis County argues that "[i]f you know the employee's DSN, then you know the employee's name." (internal citations omitted). However, "the names, positions, salaries and lengths of service of officers and employees of public agencies" are not subject to the permissive exemption available for "[i]ndividually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment" pursuant to Section 610.021(13) RSMo. (2016 & Supp. 2022).

The summary judgment record before us is devoid of evidence that any officer DSN was connected, in a manner discernible to the public, to any investigation; any action involving the hiring, firing, discipline, or promoting of any employee; the merit or performance of any employee; or any individually identifiable personnel record as cited in sections 610.021(3) and 610.021(13) RSMo. (2016 & Supp. 2022). Nor does the summary judgment record support that Weeks made such a request, and the parties acknowledged this at oral argument. "[T]he permissive closure available in section 610.021 is qualified by its own terms, that is, records may not be closed under that section 'to the extent disclosure is otherwise required by law.'" *Guyer*, 38 S.W.3d at 414. That is, all records of public governmental bodies are presumed to be open records, and the exceptions are to be strictly construed to promote that policy. *Id*.

Based on the summary judgment record before us, I would find that St. Louis County has failed to meet its burden to establish that a DSN is subject to a permissive exemption from disclosure under the Sunshine Law as either personal information under section 610.021(3) RSMo. (2016 & Supp. 2022), or personnel records or information regarding an employee's job performance under section 610.021(13) RSMo. (2016 & Supp. 2022). I respectfully disagree with the majority opinion. We cannot rely on inferences outside the summary judgment record to draw a conclusion that disclosure of DSNs will suggest any particular officer has engaged in a pattern of race-based traffic stops, which section 590.650.5 seeks to rectify.

On the present record, a genuine issue of material fact remains with regard to St. Louis County: whether a DSN alone would reveal an officer's personal information or individually identifiable personnel records. As a result, St. Louis County has failed to establish that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. As the case proceeds, the County may be able to develop the record to establish that DSNs are subject to a permissive exemption under section 610.021(3) or (13) RSMo. (2016 & Supp. 2022). However, our review is confined to the summary judgment record, *Almat Builders*, 615 S.W.3d at 76, and the summary judgment record does not establish permissive exemption from disclosure under the Sunshine Law.

For these reasons, I would hold that the trial court erred in granting summary judgment to the City of Webster Groves and to St. Louis County. As to Webster Groves, I would reverse the grant of summary judgment, and give such judgment as the trial court should have given. I would render summary judgment in favor of Weeks, and direct Webster Groves to disclose its Vehicle Stop records, including officer DSNs.

13

As to St. Louis County, the trial court erred when it granted summary judgment because, on the record before us, the County did not establish its entitlement as a matter of law to judgment based on facts about which there is no genuine dispute. I would reverse and remand for further proceedings consistent with this opinion.

_____
Angela T. Quigless, Judge

14